UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JAHEEM R. HILTS,

               Plaintiff,

v.

               1:26-cv-0228
               (MAD/CBF)

BELLEVUE WOMANS CENTER,

               Defendant.

---

APPEARANCES:

JAHEEM R. HILTS
*Plaintiff, pro se*
845 Broadway, Apt. 324
Schenectady, NY 12305

**CARLA B. FREEDMAN**, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION AND ORDER</u>

## I.      INTRODUCTION

The Clerk has sent to the Court for review a complaint submitted by *pro se* plaintiff

Jaheem R. Hilts ("Plaintiff").  Dkt. No. 1.  Plaintiff also seeks leave to proceed *in forma pauperis*

("IFP").  Dkt. No. 2.

## II.     IFP APPLICATION

Plaintiff has not paid the filing fee for this action and seeks leave to proceed IFP.  Dkt.

No. 2.  Upon review, Plaintiff's IFP application demonstrates economic need.  *See id*.  Therefore,

he is granted permission to proceed IFP.[1]

---

[1] Although his IFP application has been granted, Plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

III.    **BACKGROUND**

Plaintiff commenced this action by filing a complaint on February 12, 2026, utilizing this District's form civil rights complaint pursuant to 42 U.S.C. § 1983. *See generally*, Dkt. No. 1.[2] The complaint lists one Defendant, "Bellevue Womans Center," a "Hospital" located in Niskayuna, New York. *Id*. at 1. The "facts" section of the complaint reads, in full: "Im suing Bellevue Womans Center for racial discrimination calling me Black on my Birth Certificate and having that in their system referring to me the racial profiling has made my life hard and Im 12% European Im mixed Im not Black." *Id*. at 2. The complaint lists one cause of action, "Racial Discrimination labeling me a Black person when Im mixed." *Id*. at 3. Plaintiff seeks "5 million Dollars" in relief. *Id*. at 4.

IV.    **LEGAL STANDARD**

Section 1915 of Title 28 requires a district court to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2); § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret

---

[2] Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

them to raise the "strongest arguments that they *suggest.*" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted, emphasis in original).  A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless . . . or (2) the claim is based on an indisputably meritless legal theory.").

Additionally, when reviewing a complaint, a court may look to the Federal Rules of Civil Procedure.  *See*, *e.g.*, *Cole v. Smrtic*, No. 1:24-CV-00847 (MAD/CFH), 2024 WL 4870495, at *2 (N.D.N.Y. Nov. 21, 2024) (explaining, "special solicitude for *pro se* pleadings has its limits, because *pro se* pleadings still must comply with . . . the Federal Rules of Civil Procedure . . . .") (internal quotations and citation omitted), *report and recommendation adopted*, 2025 WL 247901 (N.D.N.Y. Jan. 21, 2025).  To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2).  This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V.    ANALYSIS

Federal courts exercise limited jurisdiction pursuant to Article III of the Constitution. A court may exert subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States" and civil actions where there is diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000. 28 U.S.C. §§ 1331, 1332. In the absence of a basis for exercising jurisdiction, the case must be dismissed. Fed. R. Civ. P. 12(h)(3); *United States v. Cotton*, 535 U.S. 625, 630 (2002); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 n.10 (2006) ("A claim invoking federal-question jurisdiction under 28 U.S.C. § 1331 . . . may be dismissed for want of subject-matter jurisdiction if it is not colorable, *i.e.*, if it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'") (citing *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)) (additional citations omitted). "[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000).

4

Here, Plaintiff has failed to allege a federal claim such that the Court's federal question subject matter jurisdiction under 28 U.S.C. § 1331 may be invoked.  *See generally*, *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (the plaintiff bears the burden of establishing subject matter jurisdiction).

As previously stated, Plaintiff purports to bring claims pursuant to 42 U.S.C. § 1983.  *See* Dkt. No. 1 at 1.  "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action."  *Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotations and citation omitted).  Therefore, "[t]o state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)); *see also Bennett v. Bailey*, No. 5:20-CV-0903 (GTS/ATB), 2020 WL 5775940, at *2 (N.D.N.Y. Aug. 17, 2020) ("The requirement that the defendant acted under 'color of state law' is jurisdictional.") (citation omitted), *report and recommendation adopted*, 2020 WL 5775231 (N.D.N.Y. Sept. 28, 2020).  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)) (additional citation omitted).

Here, the complaint is entirely devoid of any suggestion of state action.  *See generally*, Dkt. No. 1.  Plaintiff does not allege the sole Defendant acted under color of state law, or that he was deprived of any right, privilege, or immunity arising under the Constitution or laws of the

United States.  *See generally*, *id*.  Moreover, "[i]n general, a private hospital will not be considered a state actor."  *Rule v. Braiman*, No. 1:23-CV-01218 (BKS/CFH), 2024 WL 4042135, at *13 (N.D.N.Y. Sept. 4, 2024) (internal quotations and citation omitted); *see also Fisher v. Glens Falls Hosp.*, No. 1:25-CV-831 (AJB/DJS), 2025 WL 2324128, at *2 (N.D.N.Y. July 15, 2025) (explaining, while private parties, such as hospitals "generally are not state actors, their conduct can be attributed to the state for section 1983 purposes if '(1) the State compelled the conduct, (2) there is a sufficiently close nexus between the State and the private conduct, or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State,'" however, "[t]he activities of private hospitals and their officers typically do not satisfy any of these tests.") (citing *Hogan v. A.O. Fox Mem'l Hosp.*, 346 F. App'x 627, 629 (2d Cir. 2009)) (internal quotations omitted), *report and recommendation adopted*, 2025 WL 2323523 (N.D.N.Y. Aug. 12, 2025).  Accordingly, the allegations in Plaintiff's complaint are insufficient to state a claim under Section 1983.  *See*, *e.g.*, *Fisher*, 2025 WL 2324128, at *2.

Next, on the civil cover sheet submitted with the complaint, Plaintiff identified "U.S. Government Plaintiff" as the basis of jurisdiction.  *See* Dkt. No. 1-1 at 1.  That is plainly not accurate.

Finally, on the same civil cover sheet, Plaintiff listed "Title VII of civil rights act of 1964" as "the U.S. Civil Statute under which [he is] filing."  *Id*.  Plaintiff added the following description, "Labeling me a Black person making life harder for me Im mixed."  *Id*.  Title VII prohibits employers from discriminating against employees "because of such individual's race, color, religion, sex or national origin[.]"  42 U.S.C. § 2000e-2(a).  However, Plaintiff has not alleged, nor do any of the factual allegations in the complaint even *suggest*, Plaintiff was ever employed by the sole Defendant.  *See*, *e.g.*, *Moran v. Deamelia*, No. 1:17-CV-422 (TJM/CFH),

2017 WL 2805160, at *4 (N.D.N.Y. Apr. 20, 2017) (explaining, "Title VII applies to employment discrimination, and, thus, is not applicable to plaintiff's claims" where "[b]ased on the allegations set forth in the complaint, plaintiff was never employed by defendants . . . nor ha[d] he sought employment and been discriminated against on the basis his membership in a protected class."), *report and recommendation adopted*, 2017 WL 2804941 (N.D.N.Y. June 28, 2017).  Accordingly, the complaint fails to invoke this Court's federal question subject matter jurisdiction.

Moreover, there is nothing in Plaintiff's complaint which would indicate the Court may exercise diversity jurisdiction pursuant to 28 U.S.C. § 1332.  While Plaintiff's requested $5,000,000 in relief is greater than the statutory amount in controversy requirement, *see* Dkt. No. at 4; 28 U.S.C. § 1332(a), the Defendant's listed address is also within the State of New York, therefore, Plaintiff has failed to establish diversity between the parties.  *See generally*, *Cushing v. Moore*, 970 F.2d 1103, 1106 (2d Cir. 1992) ("28 U.S.C. § 1332 requires complete diversity between all plaintiffs and all defendants . . . .").

In sum, because Plaintiff has failed to establish this Court's subject matter jurisdiction through either federal question jurisdiction or diversity jurisdiction, the undersigned recommends dismissal of the complaint in its entirety.  Because the Court lacks subject matter jurisdiction, the undersigned must recommend dismissing the action without prejudice.  *Hollander v. Garrett*, 710 F. App'x 35, 36 (2d Cir. 2018) (Summary Order); *see also Humphrey v. Syracuse Police Dep't*, 758 F. App'x 205, 206-07 (2d Cir. 2019) (Summary Order) (explaining, where a court dismisses a complaint for lack of subject matter jurisdiction, the court does "not have the power to reach the merits and dismiss the claims against the defendants for failure to state a claim, or to eventually dismiss the complaint with prejudice for failure to file a proposed amended

complaint.") (citing *Carter v. HealthPort Technologies, LLC*, 822 F.3d 47, 54-55 (2d Cir. 2016)).

The Court advises Plaintiff that should he be permitted to amend his complaint, any amended pleading he submits to this Court must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Any such amended pleading should specifically identify the legal theory or theories that form the basis for his claim. Plaintiff is cautioned that no portion of his prior complaints shall be incorporated into any amended pleading by reference. Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the Defendant and must demonstrate that a case or controversy exists between the Plaintiff and the Defendant which Plaintiff has a legal right to pursue and over which this Court has jurisdiction. Of course, Plaintiff may also pursue his claims in state court if appropriate.

## VI.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**, and it is

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED** without prejudice; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[3]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

    **IT IS SO ORDERED.**

Dated: April 13, 2026
       Syracuse, New York

Carla B. Freedman
U.S. Magistrate Judge

---

[3] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2024 WL 4870495

2024 WL 4870495
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Matthew H. COLE, Plaintiff,
v.
Honorable Michael W. SMRTIC, et al. Defendants.

No. 1:24-CV-00847 (MAD/CFH)
|
Signed November 21, 2024

**Attorneys and Law Firms**

MATTHEW H. COLE, 271 Market Street, Amsterdam, New York 12010, Plaintiff pro se.

### REPORT-RECOMMENDATION & ORDER

CHRISTIAN F. HUMMEL, United States Magistrate Judge

### I. In Forma Pauperis

**\*1** Plaintiff pro se Matthew H. Cole ("plaintiff") commenced this action (No. 1:24-CV-00623) on May 6, 2024, by filing a complaint. See Dkt. No. 1 ("Compl."). On September 26, 2024, plaintiff submitted what the Court construes to be a supplement to the complaint.[1] See Dkt. No. 7. In lieu of paying this Court's filing fees, he submitted an application for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP.[2] Thus, the Court proceeds to its review of the complaint pursuant to 28 U.S.C. § 1915. Plaintiff has also submitted for the Court's review a Pro Se Application for Permission to File Electronically and a Motion to Appoint Counsel. See Dkt. Nos. 4, 5.

[1]     The submission includes a letter addressed to District Judge D'Agostino, titled, "Requirements for Cases Removed From State Court," Dkt. No. 7; a receipt from Montgomery County Clerk dated December 8, 2022; and a "Notice of Claim" with the caption of Cole v. County of Montgomery, dated December 7, 2022. See Dkt. No. 7. The undersigned has reviewed this submission in connection with the initial review of plaintiff's complaint. See Sira v. Morton, 380 F. 3d 57, 67 (2d Cir. 2004).

[2]     Plaintiff is advised that, although he has been granted IFP status, he is still required to pay all fees and costs he may incur in this action, including, but not limited to, copying fees, transcript fees, and witness fees.

### II. Initial Review

### A. Legal Standards

Section 1915 of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C.

Case 1:26-cv-00228-MAD-CBF   Document 5   Filed 04/13/26   Page 11 of 65

Cole v. Smrtic, Not Reported in Fed. Supp. (2024)
2024 WL 4870495

§ 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted); see also Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). As the Second Circuit stated,

> There are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they "suggest[.]" At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[.]"

 **\*2**  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

"The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure [('Fed. R. Civ. P.')]." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at \*2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)). Pleading guidelines are provided in the Federal Rules of Civil Procedure. Specifically, Rule 8 requires the pleading to include:

> (1) a short and plain statement of the grounds for the court's jurisdiction ...;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought...

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Further, Fed. R. Civ. P. 10 provides:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of a defendant's duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which

the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

**\*3**  This Court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed. See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " Aguilar v. United States, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at \*2 (D. Conn. Nov. 8, 1999)[3] (quoting Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998)); see also Neitzke v. Williams, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis.").

[3]     Any unpublished cases cited within this Report-Recommendation & Order have been provided to plaintiff.

### B. Complaint

Plaintiff's civil cover sheet indicates that he seeks to bring this action pursuant to "Title U.S.C. 18 Section 241, Conspiracy Against Rights & Title U.S.C. 18 Section 242 Deprivation of rights Under Color of Law." Dkt. No. 1-1 at 1. The civil cover sheet further provides that his cause of action involves, "Violation of Due process, Speedy Trial Rights, Ineffective Assistance of Counsel. I feel I am being targeted for being black and gay." Id.

Plaintiff's form complaint checks the box indicating that he seeks to bring this case pursuant to 42 U.S.C. § 1983. See Compl. at 3. In response to the question in the form complaint asking in "what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials," plaintiff responds, "Due Process, 30.30 Speedy Trial Violation, Ineffective Assistance of counsel."[4] Id. In response to a question asking him to explain "how each defendant acted under color of state or local law," plaintiff states "Each judge deliberately denied me due process, and refused to look into the paperwork to see that i was improperly denied my speedy trial rights. It was a tean [sic] effort. The ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me. All mentioned actions were done and upheld even after I showed federal law with supportive case law as a pro se litigant." Id.

[4]     Although plaintiff generally references ineffective assistance of counsel, Compl. at 4, he does not name any attorney who may have represented him. Any claims against the prosecutor would not be considered ineffective assistance of counsel because Mr. Maxwell, as the prosecutor, was not plaintiff's attorney.

Plaintiff provides that his "case is still on appeakl [sic] in Appellate Court Third Department. I feel they are guilty, or part of what I call a scandal. I went to them from the very start with a complaint to the grievance committee, where they denied any wrongdoing. It must be ok to violate Constitutional rights there. This is from March 2019 to present" Id.

In response to a question that asks plaintiff to state the facts underlying his claims, plaintiff states, "Please see attached Article 78 that is attached. It was dismissed being in the wrong court, but is on point." Id. at 4. Plaintiff did not provide the Court with any such attachment and has not submitted any Article 78 materials. See Compl., Dkt. No. 7.

In response to the form complaint's question asking about any injuries suffered as a result of the conduct he complains of, plaintiff states, "Sever [sic] depression over 20 years, irreperable [sic] harm, defamation of charcter [sic] by arguments not legally allowed to give. Loss of income, inability to gain and keep employment, mental trauma, instilled disbelief in justice in the legal system, familial traumam [sic] due to my legal battles." Id. Indicating the relief sought, plaintiff states

> **\*4** Petitioner seeks reinstatement of driving priveldges [sic], and 10 million dollars for damages caused by conflict of interest, deliberate violation of Due Process, Speedy Trial rights, Ineffective assistance of counsel, malice, Brady Violation, Petitioner claims deliberate misconduct and malice in Montgomery County Court, the Saratoga Disrict Attorney's Office, and the Supreme Court Appellate Division Third department. \*\* This is subject to change if an attorney agrees to represent.

Compl. at 5. Although he typed his name, plaintiff does not sign the complaint where a signature is indicated. See id. at 8.

Plaintiff provides in his supplement that he "removed this action to district court asserting jurisdiction pursuant to 42 U.S.C. 1983, and § 1441." Dkt. No. 7. at 1. Plaintiff states that he removed this case from Montgomery County Supreme Court. See id. He states that he seeks or sought the removal because he was told he was "not guarantee counsel" at the state, but that "[i]n Federal Court, there is that option, pending qualification, and I am told, if a lawyer agrees to take it, then I really have something. I am in dire need of counsel." Id.

Plaintiff states, "[t]he ineffective assistance of counsel and The County Court are a matter already mentioned in the appeal." Dkt. No. 7 at 2. Plaintiff states that "[t]o get my conviction, I allege judicial and prosecutorial misconduct, and ineffective assistance of counsel × 4. That is why I am pro se. I had to protect myself when appointed counsel did not. It also went through a couple judges which is why they are mentioned in the preliminary complaint/paperwork, and why I mention bias." Id. Plaintiff states he can "prove each thing I saw not just with my words, but with transcripts [5] from the County Court, and the Adult Drug Court." Id. Plaintiff refers to being drug free for four and a half years and having academic success in college. Id. at 3. He states that he wishes this Court to hear his case because he believes he will not "see bias" in federal court "like I saw in others." Id. Plaintiff states that he "also put in a Notice of Removal in the Federal Court for those criminal charges that led to the Complaint. I do not trust the assigned appellate attorney. That case too has Constitutional violations. That case number is 1:24-CR-301 (AMN)." Id.

[5] Plaintiff did not provide any transcripts.

## C. Discussion [6]

[6] As a courtesy, the Court has provided plaintiff with copies of any unpublished cases cited within this Report-Recommendation & Order.

### 1. Rule 8

As a threshold issue, plaintiff's complaint fails to meet the requirements of Rule 8. See FED. R. CIV. P. 8(a)(2). He does not provide a short and plain statement of the claim demonstrating why he is entitled to relief. Although he makes general references to both an Article 78 proceeding and a criminal proceeding and unexplained references to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel," he does not provide factual support or context. Thus, his complaint does not provide "fair notice" to defendants of the claims against them. See FED. R. CIV. P. 8(a)(2).

### 2. Heck v. Humphrey

However, there are several substantive concerns that further lead the undersigned to recommend dismissal. First, in referencing to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel" and explicitly referencing a criminal conviction, it is clear that plaintiff is attempting to seek some kind of review of a criminal proceeding or conviction. See Compl. at 3. Plaintiff also accuses all named judges of denying him due process and contends that an unnamed "ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me." Compl. at 4. Plaintiff also references a conviction. See Dkt. No. 7 at 4. Such claims would be barred by Heck v. Humphrey.

**\*5** As this Court, citing the District of Connecticut, has set forth:

> In Heck, the Supreme Court held that in order for a plaintiff "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. The court further held that "[a] claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 487 (emphasis in original).

> [ ]

> Thus, under Heck and its progeny, if a conviction has not been invalidated previously, a "§ 1983 action is barred ... no matter the target of the prisoner's suit ... if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (emphasis in original).

Ali v. Shattuck, No. 8:24-CV-0128 (DNH/CFH), 2024 WL 2747619, at \*3 (N.D.N.Y. May 29, 2024), report-recommendation adopted sub nom. Ali v. Dow, No. 8:24-CV-128, 2024 WL 3460745 (N.D.N.Y. July 18, 2024) (quoting Zografidis v. Richards, No. 3:22-CV-00631 (AVC), 2022 WL 21756775, at \*7 (D. Conn. July 6, 2022), report and recommendation adopted (Oct. 7, 2022), aff'd, No. 22-3197, 2023 WL 7538211 (2d Cir. Nov. 14, 2023)).

Plaintiff has failed to demonstrate that any criminal charge(s), conviction, or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Zografidis, 2022 WL 21756775, at \*7. Although plaintiff's complaint wants for detail, the undersigned can clearly determine that plaintiff seeks review of his criminal proceedings, conviction, and/or sentence. The claims plaintiff seeks to pursue relate to allegations that he was denied due process, denied speedy trial rights, and experienced ineffective assistance of counsel. Accordingly, plaintiff's claims are barred by Heck unless and until he can demonstrate favorable termination of his criminal conviction. [7]

[7]   The undersigned recognizes that claims that are determined to be barred by Heck are dismissed without prejudice. However, the undersigned has recommended dismissal with prejudice because plaintiff has only named defendants who are immune from relief. Accordingly, the undersigned is recommending dismissal of the claims based on these immunities, rather than a Heck dismissal. The undersigned has included the Heck review for sake of completeness.

### 3. Immunities

Plaintiff names as defendants several defendants who are immune from suit. Insofar as plaintiff names Hon. Michael W. Smrtic, Interim Montgomery County Judge and Tatiana N. Coffinger, "County/Family/Surrogate's Court Judge" [8] such claims would be barred by judicial immunity.

[8]   Although plaintiff provides no facts regarding any family court proceedings, that he named a family court judge and makes general reference to that he seeks review over actions taken by a family court judge. Even if plaintiff were to amend his complaint to provide facts about any possible family court proceedings and details about any alleged

violations of his rights that he believes he faced in that Court, if plaintiff seeks this Court's review of an order of the family court, such review would be barred by Rooker-Feldman, and if plaintiff seeks this Court's review or intervention of a currently pending/ongoing Family Court proceeding, such review would be barred by Younger. See Porter v. Nasci, No. 5:24-CV-0033 (GTS/TWD), 2024 WL 1142144, at *4 (N.D.N.Y. Mar. 15, 2024) (citations omitted), report and recommendation adopted, 2024 WL 3158645 (N.D.N.Y. June 25, 2024) ("Under the Rooker-Feldman doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment."); see also Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002) ("[F]ederal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings.").

**\*6** "With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions." Zavalidroga v. Girouard, No. 6:17-CV-682 (BKS/ATB), 2017 WL 8777370, at *8 (N.D.N.Y. July 7, 2017) (citing Mireles v. Waco, 502 U.S. 9, 9-10 (1991) (per curiam)). "Judicial immunity has been created for the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences.' " Id. (quoting Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir. 2004)). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." Id. (citation omitted); see Positano v. New York, No. 12-CV-2288 (ADS/AKT), 2013 WL 880329, at *4 (E.D.N.Y. Mar. 7, 2013) (explaining that the plaintiff may not bring action against a judge for actions taken in his judicial capacity, even when the actions violated the ADA).

"Judicial immunity is immunity from suit, not just immunity from the assessment of damages." Zavalidroga, 2017 WL 8777370, at *8 (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.' " Id. (quoting Mireles, 502 U.S. at 11-12). "In determining whether or not a judge acted in the clear absence of all jurisdiction, the judge's jurisdiction is 'to be construed broadly, and the asserted immunity will only be overcome when the judge clearly lacks jurisdiction over the subject matter.' " Pacherille v. Burns, 30 F. Supp. 3d 159, 163 (N.D.N.Y. 2014) (quoting Ceparano v. Southampton Just. Ct., 404 F. App'x 537, 539 (2d Cir. 2011) (summary order)). "Whether a judge acted in a judicial capacity depends on the nature of the act [complained of] itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Ceparano, 404 F. App'x at 539 (internal quotation marks and citation omitted). "Further, if the judge is performing in his judicial capacity," he " 'will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.' " Ceparano, 404 F. App'x at 539 (quoting Stump v. Sparkman, 435 U.S. 349, 362 (1978)). "Judges are not, however, absolutely 'immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.' " Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (quoting Mireles, 502 U.S. at 11).

Thus, as plaintiff names the judicial defendants in relation to actions or omissions that they took in their roles as judges, their actions are protected by absolute judicial immunity. To the extent plaintiff names Hon. Felix Catena, "Retired Administrative Law Judge," Judge Catena is also protected by absolute judicial immunity as a judge's retirement, "does not impact [his or] her immunity for acts taken in [his or] her official capacity before her retirement." McCray v. Lewis, No. 16-CV-3855 (WFK/VMS), 2016 WL 4579081, at *2 (E.D.N.Y. Aug. 31, 2016). To the extent plaintiff may seek to sue the judges their official capacities, the suit is barred by the Eleventh Amendment. See Pacherille v. Burns, 30 F. Supp. 3d 159, 163 n.5 (N.D.N.Y. 2014) ("The Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities.").

**\*7** In addition, plaintiff also references, exclusively in his "relief" section of the form complaint, "the Supreme Court Appellate Division, Third Department" when stating that he experienced "deliberate misconduct and malice." Compl. at 7. He does not name this Court as a defendant anywhere in the complaint. However, even if plaintiff were to have named the Appellate Division, Third Department as a defendant, such defendant would also need to be dismissed based on Eleventh Amendment immunity as the Appellate Division "is merely an agency or arm of New York State." Benyi v. New York, No. 3:20-CV-1463 (DNH/ML), 2021 WL 1406649, at *5 (N.D.N.Y. Mar. 23, 2021), report and recommendation adopted, No. 3:20-CV-1463, 2021 WL 1404555 (N.D.N.Y. Apr. 13, 2021) (citation omitted). Accordingly, to the extent a liberal reading of the complaint may suggest

Cole v. Smrtic, Not Reported in Fed. Supp. (2024)

2024 WL 4870495

that plaintiff seeks to name the Appellate Division as a defendant, such claims are barred by Eleventh Amendment immunity. See Compl.

Finally, insofar as plaintiff seeks to sue Prosecutor Samuel V. Maxwell, Esq., Assistant District Attorney, in addition to the Heck issues noted above, he would be protected by absolute prosecutorial immunity. As this Court has recently reiterated,

> Prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities 'intimately associated with the judicial phase of the criminal process.' " Barr v. Abrams, 810 F.2d 358, 360-61 (2d Cir. 1987) (citing Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). This immunity encompasses "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) (internal quotations and citation omitted). Absolute immunity applies when a prosecutor's conduct, acting as an advocate during the judicial phase of the criminal process, "involves the exercise of discretion." Flagler v. Trainor, 663 F.3d 543, 547 (2d Cir. 2011) (citing Kalina v. Fletcher, 522 U.S. 118, 127 (1997)).

> Accordingly, absolute immunity extends to functions such as "deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas." Simon v. City of New York, 727 F.3d 167, 171 (2d Cir. 2013) (citing Imbler, 424 U.S. at 431 n.33); see also Flagler, 663 F.3d at 547 (explaining, "the Supreme Court has found prosecutors absolutely immune from suit for alleged misconduct during a probable cause hearing, in initiating a prosecution, and in presenting the State's case ... [but] withheld absolute immunity for conduct unrelated to advocacy, such as giving legal advice, holding a press conference, or acting as a complaining witness."). "[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused ...." Bernard v. Cnty. of Suffolk, 356 F.3d 495, 503 (2d Cir. 2004) (citing Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985)).

Williams v. Atkins, No. 5:24-CV-0573 (DNH/TWD), 2024 WL 3649849, at *5 (N.D.N.Y. June 11, 2024), report and recommendation adopted, No. 5:24-CV-573, 2024 WL 3548760 (N.D.N.Y. July 26, 2024).

Plaintiff appears to suggest that Mr. Maxwell "withheld potentially exculpatory material" that was used against him. Compl. at 4. Beyond the Heck barriers already discussed, even if plaintiff could amend to provide greater detail, absolute immunity would extent to even this alleged misconduct as such allegations clearly fall within the scope of prosecutorial immunity. Accordingly, it is recommended that any claims against ADA Samuel V. Maxwell be dismissed for absolute prosecutorial immunity. "Furthermore, because the District Attorney's prosecutorial immunity is substantive and not something that can be corrected by a better pleading, I recommend that the dismissal be with prejudice." Phillips v. New York, No. 5:13-CV-927, 2013 WL 5703629, at *5 (N.D.N.Y. Oct. 17, 2013) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 223 (2d Cir. 2000)). [9]

[9]     Plaintiff appears to characterize his submissions as a purported removal to federal court or suggests that he seeks to remove his case from Montgomery County Court to this Court. See Dkt. No. 7 (citing 28 U.S.C. § 1441). However, in addition to the infirmities mentioned above, plaintiff has not demonstrated that any proceeding related to this complaint has been properly removed to, or is subject to removal to, this Court. See, e.g., 28 U.S.C. § 1446. Indeed, plaintiff's submissions appear to indicate that plaintiff is the plaintiff in the County Court action. See id. § 1446(a).

### III. Conclusion

**\*8** It is **ORDERED**, that plaintiff's in forma pauperis application (dkt. no. 2) be **GRANTED**; and it is

**RECOMMENDED**, that plaintiff's section 1983 claims against Honorable Michael W. Smrtic; Tatiana N. Coffinger, County/Family/Surrogate's Court Judge; and Felix Catena, Retired Administrative Law Judge (Dkt. Nos. 1, 7) be **DISMISSED WITH**

Case 1:26-cv-00228-MAD-CBF   Document 5   Filed 04/13/26   Page 17 of 65

Cole v. Smrtic, Not Reported in Fed. Supp. (2024)

2024 WL 4870495

**PREJUDICE** as follows: (1) claims brought against them in their personal/individual capacities for judicial immunity, and (2) claims brought against them in their official capacities for Eleventh Amendment immunity; and it is further

**RECOMMENDED**, that plaintiff's section 1983 claims against Assistant District Attorney Samuel V. Maxwell (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** due to absolute prosecutorial immunity; and it is further

**RECOMMENDED**, that, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division, Third Department, as a defendant (Dkt. Nos. 1, 7), such claims be **DISMISSED WITH PREJUDICE** as barred by Eleventh Amendment immunity, and it is

**RECOMMENDED**, that plaintiff's pro se motion for permission to file electronically (dkt. no. 4) and motion to appoint counsel [10] (dkt. no. 5) be **DISMISSED AS MOOT** based on the above recommendations, and it is

[10]   The undersigned also notes that plaintiff did not contend that he made any efforts to obtain counsel on his own, show proof of any attorneys he contacted. See Terminate Control Corp v. Horowitz, 28 F.3d 1335 (2d Cir. 1994). See Dkt. No. 5.

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), parties have
**FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72. [11]

[11]   If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**All Citations**

Not Reported in Fed. Supp., 2024 WL 4870495

---

**End of Document**                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Cole v. Smrtic, Not Reported in Fed. Supp. (2025)

2025 WL 247901

Case 1:26-cv-00228-MAD-CBF   Document 5   Filed 04/13/26   Page 18 of 65

2025 WL 247901
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Matthew H. COLE, Plaintiff,

v.

Honorable Michael W. SMRTIC, Interim Montgomery County Judge; Tatiana N. Coffinger,
County/Family/Surrogate's Court Judge; Honorable Felix Catena, Retired Administrative
Law Judge; and Samuel V. Maxwell, Esq., Assistant District Attorney, Defendants.

1:24-CV-847 (MAD/PJE)
|
Signed January 21, 2025

**Attorneys and Law Firms**

MATTHEW H. COLE, 271 Market Street, Amsterdam, New York 12010, Plaintiff pro se.

**ORDER**

Mae A. D'Agostino, United States District Judge:

**\*1** Plaintiff commenced this action on May 6, 2024, asserting that Defendants violated his due process and speedy trial rights, and that he received ineffective assistance of counsel in an underlying state criminal action. *See* Dkt. No. 1. In a Report-Recommendation and Order dated November 21, 2024, Magistrate Judge Hummel granted Plaintiff's request to proceed *in forma pauperis* and conducted an initial review of the complaint. *See* Dkt. No. 8. In the Report-Recommendation and Order, Magistrate Judge Hummel concluded that, in addition to the complaint being subject to dismissal for failure to comply with Rule 8 of the Federal Rules of Civil Procedure, Plaintiff's due process, speedy trial, and ineffective assistance of counsel claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because Plaintiff's underlying state court conviction has not been reversed on direct appeal or otherwise expunged. *See id.* at 8-10. Moreover, the Report-Recommendation and Order recommended dismissal of the claims against Defendants Smrtic, Coffinger, and Catena since they are barred by absolute judicial immunity. *See id.* at 10-12. To the extent Plaintiff is attempting to assert a claim against the Appellate Division, Third Department, Magistrate Judge Hummel found that the claim is barred by Eleventh Amendment immunity because the Appellate Division " 'is merely an agency or arm of New York State." *Id.* at 12-13 (quotation omitted). Finally, Magistrate Judge Hummel recommended that the claims against Defendant Maxwell be dismissed because he is protected by prosecutorial immunity. *See id.* at 13-14. Plaintiff has not objected to the Report-Recommendation and Order.

When a party files specific objections to a magistrate judge's report-recommendation, the district court "make[s] a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [that he] presented to the magistrate judge," the court reviews those recommendations for clear error only. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, \*2 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

In the present matter, the Court finds that Magistrate Judge Hummel correctly determined that Plaintiff's complaint must be dismissed. Plaintiff's complaint makes clear that his claims stem from alleged violations of his rights that occurred during an underlying state criminal case. *See* Dkt. No. 1 at 3-4; Dkt. No. 7 at 4. Since Plaintiff's criminal conviction has not been reversed,

Cole v. Smrtic, Not Reported in Fed. Supp. (2025)

2025 WL 247901

expunged by executive order, or called into question by a federal court's issuance of a writ of habeas corpus, Plaintiff's claims brought pursuant to Section 1983 are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *See Strong v. Watson*, No. 1:22-cv-552, 2023 WL 8439445, *14-15 (W.D.N.Y. Sept. 26, 2023) (dismissing the plaintiff's claims of malicious prosecution, conspiracy, speedy trial violations, denial of due process, and denial of equal protection under *Heck* because the claims "all seek to impugn the validity of his underlying state court criminal charges").

**\*2** Magistrate Judge Hummel also correctly determined that, in the alternative, the claims against the named Defendants are subject to dismissal based on absolute judicial and prosecutorial immunity. The allegations against Defendants Smrtic, Coffinger, and Catena make clear that these individuals were acting in their judicial capacities and that their actions were not taken in the absence of jurisdiction. Accordingly, they are entitled to absolute judicial immunity. *See Ceparano v. Southampton Just. Ct.*, 404 Fed. Appx. 537, 539 (2d Cir. 2011). As to Defendant Maxwell, Plaintiff has alleged that he withheld exculpatory evidence in the underlying criminal matter. Since this conduct clearly involves "prosecutorial activities 'intimately associated with the judicial phase of the criminal process,' " Defendant Maxwell is entitled to absolute prosecutorial immunity. *See Barr v. Abrams*, 810 F.2d 358, 360-61 (2d Cir. 1987) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Additionally, to the extent Plaintiff has attempted to assert claims against the Appellate Division, Third Department, the claims must be dismissed because the Third Department is an arm of New York State and is entitled to Eleventh Amendment immunity. *See Benyi v. New York*, No. 3:20-cv-1463, 2021 WL 1406649, *5 (N.D.N.Y. Mar. 23, 2021) (citation omitted).

Finally, the Court agrees with Magistrate Judge Hummel that, because it is clear that the issues with Plaintiff's complaint are substantive and not something that can be corrected by better pleading, Plaintiff will not be afforded an opportunity to amend his complaint. *See Phillips v. New York*, No. 5:13-cv-927, 2013 WL 5703629, *5 (N.D.N.Y. Oct. 17, 2013) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Hummel's November 21, 2024, Report-Recommendation and Order (Dkt. No. 8) is **ADOPTED in its entirety** for the reasons set forth herein; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED without leave to amend**; and the Court further

**ORDERS** that Plaintiff's motion for permission to file electronically (Dkt. No. 4) and motion to appoint counsel (Dkt. No. 5) are **DENIED as moot**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2025 WL 247901

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Bennett v. Bailey, Not Reported in Fed. Supp. (2020)

2020 WL 5775940

2020 WL 5775940
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Andrew S. BENNETT and Kristina M. McDonald, Plaintiffs,

v.

Don BAILEY and Route 11 Motorsports, Defendants.

5:20-CV-903 (GTS/ATB)

|

Signed 08/17/2020

**Attorneys and Law Firms**

ANDREW S. BENNETT and KRISTINA M. McDONALD, Plaintiffs Pro Se.

### ORDER and REPORT-RECOMMENDATION

ANDREW T. BAXTER, United States Magistrate Judge

**\*1** The Clerk has sent to the court for review a complaint brought pursuant to 42 U.S.C. § 1983, filed by plaintiffs Andrew S. Bennett and Kristina M. McDonald. (Dkt. No. 1). Plaintiffs have also applied to proceed in forma pauperis ("IFP"). [1] (Dkt. No. 2).

[1]   Both plaintiffs have signed the complaint and the IFP application and are each representing themselves. Because this court is recommending dismissal for lack of jurisdiction, the court will not require plaintiffs to file separate IFP applications.

### I. IFP Application

Plaintiffs declare in their IFP application that they are unable to pay the filing fee. (Dkt. No. 2). After reviewing his application, this court finds that plaintiffs are financially eligible for IFP status.

However, in addition to determining whether plaintiffs meet the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

2020 WL 5775940

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

## II. Complaint

Plaintiffs allege that on March 17, 2020, they purchased a car from the defendant Don Bailey and his company Route 11 Motorsports. (Complaint ("Compl.") ¶ 4 at p.2 (Facts)). Plaintiffs claim that defendant Bailey gave them a "90 Day Warranty" which he is not honoring. (*Id.*) Two days after they purchased the vehicle, the motor began "knocking," and plaintiffs contacted Don Bailey, who has failed to rectify the situation. (*See* Compl. *generally* ¶ 4 at pp.3-6). Plaintiffs seek a full refund of the purchase price of the vehicle and damages for pain and suffering for a total of $10,500. (Compl. ¶¶ 5-6).

## III. Subject Matter Jurisdiction

### A. Legal Standards

 **\*2**  Federal courts are courts of limited jurisdiction, have only the power that is authorized by Article III of the Constitution, and may only preside over cases that fall within the subject matters delineated by Congress. *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986) (citation omitted). The court must determine whether it has subject matter jurisdiction, and must dismiss a case at any stage of the proceedings if it determines that jurisdiction is lacking. *Cave. v. East Meadow Union Free School Dist.*, 514 F.3d 240, 250 (2d Cir. 2008).

In addition, federal courts have an "independent obligation" to consider the presence or absence of subject matter jurisdiction sua sponte. *Leopard Marine & Trading, Ltd. v. Easy Street, Ltd.*, 896 F.3d 174, 181 (2d Cir. 2018) (quoting *In re Quigley Co., Inc.*, 676 F.3d 45, 50 (2d Cir. 2012). Subject matter jurisdiction can never be waived or forfeited. *ACCD Global Agriculture, Inc. v. Perry*, No. 12 Civ. 6286, 2013 WL 840706, at \*1 (S.D.N.Y. March 1, 2013) (quoting *Dumann Realty, LLC v. Faust*, No. 09 Civ 7651, 2013 WL 30672, at \*1 (S.D.N.Y. Jan. 3, 2013) (citing *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012); *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 434-35 (2011)).

Federal question jurisdiction pursuant to 28 U.S.C. § 1331 provides a basis for jurisdiction when the plaintiff brings a civil action that arises "under the Constitution, laws, or treaties of the United States." 28 U.S. C. § 1331. Diversity jurisdiction is present when an action is between citizens of different states, and when the amount in controversy is in excess of $75,000.00. 28 U.S.C. § 1332(a)(1).

### B. Application

#### 1. Section 1983

#### a. Legal Standards

In order to bring a civil rights action under 42 U.S.C. § 1983, the plaintiff must establish that a defendant, who acts under color of state law, has caused the deprivation of a right protected by the federal constitution or laws. 42 U.S.C. § 1983. A person acts under color of state law when he or she acts in his or her official capacity, "clothed with the authority of state law," or acts under "pretense" of law by purporting to act with official power. *Pleasure Island, Inc. v. City of New York*, No. 12 Civ. 4699, 2013 WL 2311837, at \*5-6 (E.D.N.Y. May 24, 2013) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)).

The requirement that the defendant acted under "color of state law" is jurisdictional. *Lucas v. Riggi*, No. 07-CV-6200, 2008 WL 4758706, at \*2 (W.D.N.Y. Oct. 29, 2008) (citing *Polk County v. Dodson*, 454 U.S. 312, 315 (1981)). Private conduct is simply

2020 WL 5775940

beyond the reach of section 1983 " 'no matter how discriminatory or wrongful" that conduct may be." *Id.* (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999)). A private party may act under color of state law if he or she engages in conduct that constitutes willful participation in joint activity with the state. *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (per curiam). The nexus to the state must be so close as to be fairly treated as that of the state itself. *Tancredi v. Metro Life Ins. Co.,* 316 F.3d 308, 312 (2d Cir. 2003) (citations omitted).

### b. Application

The defendants in this action are a private individual and what appears to be his car dealership. There is no indication that either of the defendants acts under color of state law. Therefore there is no jurisdiction under section 1983 for the plaintiffs' case. The court realizes that the plaintiffs are pro se and will attempt to determine whether there is any other jurisdictional basis for plaintiffs to bring an action in this court pursuant to federal question or diversity jurisdiction. [2]

[2]     A pro se plaintiff's pleadings are interpreted to raise the strongest arguments that they suggest. *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

### 2. Magnuson-Moss Warranty—Federal Trade Commission Act ("MMWA"), 15 U.S.C. § 2301

### a. Legal Standards

**\*3**  The MMWA, is also known as the federal "lemon law." *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 222 (2d Cir. 2017). The MMWA "is a remedial statute designed 'to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products.' " *Id.* (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. Abrams*, 899 F.2d 1315, 1317 (2d Cir. 1990)) (quoting 15 U.S.C. § 2302(a)). The MMWA allows "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with ... a written warranty [or] implied warranty ... [to] bring suit for damages and other legal and equitable relief.' " *Id.* (quoting 15 U.S.C. § 2310(d)(1)). However, the MMWA provides for federal jurisdiction under certain circumstances. *Id.* MMWA claims may be brought in federal court only if the amount in controversy meets or exceeds $50,000 (exclusive of interests and costs), computed on the basis of all claims in the action. *Id.* (citing § 2310(d)(3)(B)).

### b. Application

Plaintiffs in this action allege that the value of the car was $7,000.00 and their "pain and suffering" was worth another $3,500.00 for a total of $10,500.00 in damages. (Compl. ¶¶ 5-6). Thus, even if plaintiffs could make a claim under the MMWA for the failure of defendants to abide by their warranty, and even if they had cited the appropriate statute, plaintiffs cannot meet the jurisdictional amount for bringing an MMWA claim in federal court.

### 3. Contract Claims

### a. Legal Standards

Contract actions are generally state law claims, "governed by state law standards and analyzed using the familiar elements applied in a New York breach of contract action." *Liana Carrier Ltd. v. Pure Biofuels Corporation*, 672 F. App'x 85, 92 (2d Cir. 2016). Contractual obligations, are inherently creatures of state law. *Eugene Iovine, Inc. v. City of New York*, No. 98 Civ. 2767,

Case 1:26-cv-00228-MAD-CBF Document 5 Filed 04/13/26 Page 23 of 65

Bennett v. Bailey, Not Reported in Fed. Supp. (2020)
2020 WL 5775940

1999 WL 4899, at *2 (S.D.N.Y. Jan. 5, 1999) (citing *Gully v. First National Bank in Meridian*, 299 U.S. 109, 115 (1939)). "[A] complaint alleging a violation of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treaties of the United States.' " *Id.* (quoting *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 817 (1986)).

#### b. Application

Plaintiffs in this case essentially argue that defendant Bailey did not honor his agreement to fix the plaintiffs' car and now does not return their calls or texts. (Compl. ¶ 4 at pp.5-6). As stated above, plaintiffs do not meet the jurisdictional minimum for an MMWA claim. To the extent that plaintiffs are trying to state a contract claim or a simple warranty claim, there is no jurisdiction in federal court for this action, given the facts of plaintiffs' case. While federal courts decide state law claims, those claims are generally either supplemental to a federal claim[3] or brought under diversity jurisdiction. There are no viable federal claims in this action. Thus, supplemental jurisdiction does not apply. Plaintiffs and defendants are citizens of the same state, and the amount in controversy is less than the jurisdictional amount of $75,000.00. Thus, there is no diversity jurisdiction. Because there is no jurisdiction to decide plaintiffs' claims, I must recommend dismissal.

[3]     28 U.S.C. § 1367(a) provides that

in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

### IV. Opportunity to Amend

#### A. Legal Standards

**\*4** Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiffs' causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

#### B. Application

There is no subject matter jurisdiction for plaintiffs to bring this action in federal court. It does not appear that any amendment or additional pleading will cure the defects in jurisdiction. Because there is no subject matter jurisdiction, the court will recommend dismissing the action without prejudice to plaintiffs bringing their claims in the appropriate state court. However, such dismissal should be without the opportunity to amend since plaintiffs will not be able to cure the deficiency in their complaint with better pleading.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiffs' application to proceed IFP (Dkt. No. 2) is **GRANTED ONLY TO THE EXTENT NECESSARY TO FILE THIS ACTION**, and it is

**RECOMMENDED**, that the plaintiffs' complaint be **DISMISSED WITHOUT PREJUDICE FOR LACK OF SUBJECT MATTER JURISDICTION, BUT WITHOUT THE OPPORTUNITY TO AMEND**, and it is.

**ORDERED**, that the Clerk serve a copy of this Order and Report-Recommendation on plaintiffs by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 5775940

---

**End of Document**                      © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 5775231

2020 WL 5775231
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Andrew S. BENNETT; and Kristina M. McDonald, Plaintiffs,

v.

Don BAILEY; and Route 11 Motorsports, Defendants.

5:20-CV-0903 (GTS/ATB)
|
Signed 09/28/2020

**Attorneys and Law Firms**

ANDREW S. BENNETT and KRISTINA M. McDONALD, Plaintiffs, Pro Se, 1137 Roberts Hollow Road, Lowman, New York 14861.

**DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this *pro se habeas* breach-of-contract action filed by Andrew S. Bennett and Kristina M. McDonald ("Plaintiffs") against Don Bailey and Route 11 Motorsports ("Defendants") pursuant to 42 U.S.C. § 1983, is United States Magistrate Judge Andrew T. Baxter's Report-Recommendation recommending that Plaintiffs' Complaint be dismissed without prejudice for lack of subject-matter jurisdiction pursuant to 28 U.S.C. § 1915 and that such dismissal should be without prior leave to amend. (Dkt. No. 3.) Plaintiffs have not filed an objection to the Report-Recommendation, and the time in which to do so has expired. (*See generally* Docket Sheet.)

After carefully reviewing the relevant papers herein, including Magistrate Judge Baxter's thorough Report-Recommendation, the Court can find no clear-error in the Report-Recommendation. [1] Magistrate Judge Baxter employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons set forth therein, and Plaintiffs' Complaint is dismissed without prejudice for lack of subject-matter jurisdiction.

[1]  When no objection is made to a report-recommendation, the Court subjects that report-recommendation to only a clear-error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at \*1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Baxter's Report-Recommendation (Dkt. No. 3) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiffs' Complaint (Dkt. No. 1) is **DISMISSED** **without prejudice for lack of subject-matter jurisdiction.**

**Bennett v. Bailey, Not Reported in Fed. Supp. (2020)**

2020 WL 5775231

**All Citations**

Not Reported in Fed. Supp., 2020 WL 5775231

---

**End of Document**                                              © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:26-cv-00228-MAD-CBF Document 5 Filed 04/13/26 Page 27 of 65

Rule v. Braiman, Not Reported in Fed. Supp. (2024)
2024 WL 4042135

2024 WL 4042135
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Tara RULE, Plaintiff,
v.
Jonathan BRAIMAN, Donna Kirker, Lisa West, Christine Calistri (Towers), Albany Med Health
Partners (Systems), Glens Falls Hospital, Saratoga Hospital, Malta Med Emergent Care, Defendants.

1:23-cv-01218 (BKS/CFH)
|
Signed September 4, 2024

**Editor's Note:** This decision contains discussion of citation references that are incorrect or do not actually exist. These invalid citations appeared in the original court opinion and have been preserved as written since they are part of the official record. Any links to these invalid citations have been removed.

**Attorneys and Law Firms**

Plaintiff Pro Se: Tara Rule, Round Lake, New York 12151.

For Defendant Jonathan Braiman: Michael J. Murphy, Barclay Damon LLP, 80 State Street, Albany, New York 12207.

For Defendants Lisa West and Christine Calistri: Karen A. Butler, Maynard, O'Connor, Smith & Catalinotto, LLP, 6 Tower Place, Albany, New York 12203.

For Defendants Albany Med Health System, Glens Falls Hospital, Saratoga Hospital, Healthcare Partners of Saratoga Ltd. (dba Malta Med Emergent Care), and Donna Kirker: Michael D. Billok, Rebecca J. LaPoint, Bond, Schoeneck & King, PLLC, 268 Broadway, Suite 104, Saratoga Springs, New York 12866.

**MEMORANDUM-DECISION AND ORDER**

Brenda K. Sannes, Chief United States District Judge:

**I. INTRODUCTION**

**\*1** This action stems from Plaintiff pro se Tara Rule's September 14, 2022 appointment with Defendant Dr. Jonathan Braiman in the neurology department of Glens Falls Hospital and September 21, 2022 visit to Defendant Malta Med Emergent Care ("Malta Med"). (Dkt. No. 45). Plaintiff brings this action against Defendants Dr. Braiman, Donna Kirker, Lisa West, Christine Calistri, [1] Albany Med Health Partners ("Albany Med"), Glens Falls Hospital, Saratoga Hospital, and Malta Med Emergent Care ("Malta Med"), and alleges: (1) sex, age, and disability discrimination and retaliation in violation of the Patient Protection and Affordable Care Act ("ACA"), 124 Stat. 260, 42 U.S.C. § 18116 (First Cause of Action); (2) denial of a public accommodation, in violation of Title II of the Civil Rights Act (Second Cause of Action); (3) age discrimination in violation of the Age Discrimination Act of 1975, 42 U.S.C. §§ 6101–6107 (Third Cause of Action); (4) a violation of the Patient Self-Determination Act, 42 U.S.C. § 1395cc(f) (Fourth Cause of Action); (5) false statements relating to health care, in violation of 18 U.S.C. § 1035 (Fifth Cause of Action); (6) a violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320d et seq. (Sixth Cause of Action); (7) violations of 18 U.S.C. §§ 371, 241, 242, and violations of the First and Fourteenth Amendments under 42 U.S.C. § 1983 (Seventh Cause of Action); (8) a violation of the Emergency Medical Treatment and Labor Act ("EMTALA"), 42 U.S.C. § 1395dd (Eighth Cause of Action); (9) health care fraud, in violation of 18 U.S.C. § 1347

Case 1:26-cv-00228-MAD-CBF Document 5 Filed 04/13/26 Page 28 of 65

Rule v. Braiman, Not Reported in Fed. Supp. (2024)
2024 WL 4042135

(Ninth Cause of Action); (10) disability discrimination, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 (Tenth Cause of Action); (11) negligence (Eleventh Cause of Action); (12) negligence per se (Twelfth Cause of Action); (13) malpractice (Thirteenth Cause of Action); (14) intentional infliction of emotional distress (Fourteenth Cause of Action); (15) invasion of privacy (Fifteenth Cause of Action); (16) harassment (Sixteenth Cause of Action); and (17) negligent infliction of emotional distress (Seventeenth Cause of Action). (Dkt. No. 45). Presently before the Court are Defendants' motions to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Dkt. Nos. 63, 66, 68). Plaintiff opposes Defendants' motions. (Dkt. Nos. 74, 75, 76). The motions are fully briefed. (Dkt. Nos. 77, 78, 81, 86, 87, 88). For the reasons that follow, Defendants' motions are granted in part and denied in part.

1    The caption of the Amended Complaint names Calistri as "Christine Calistri (Towers)." (Dkt. No. 45, at 1). As she refers to herself as "Christine Calistri" in her submissions, (see Dkt. No. 63-5, at 1), the Court does likewise.

## II. FACTS [2]

2    The facts are drawn from the Amended Complaint and the attached exhibits. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, see Lynch v. City of New York, 952 F.3d 67, 74–75 (2d Cir. 2020), but does not accept as true the legal conclusions, see Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The Court declines to consider the exhibits Defendants have filed in support of their motions to dismiss. See Palin v. New York Times Co., 940 F.3d 804, 810–11 (2d Cir. 2019) (explaining that when matters outside the pleadings are presented and are not "integral" to the complaint or subject to judicial notice, Rule 12(d) "presents district courts with only two options: (1) 'the court may exclude the additional material and decide the motion on the complaint alone' or (2) 'it may convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material' " (quoting Fed. R. Civ. P. 12(d))).

### A. Parties

**\*2**  Plaintiff is a 32-year-old woman who "suffers from a disabling genetic disorder called Ehlers Danlos Syndrome (EDs) (hypermobile subtype) which causes severe pain and medical complications." (Dkt. No. 45, ¶¶ 1, 42).

Albany Med, Glens Falls Hospital, and Saratoga Hospital are "voluntary non-profit private hospital[s] that receive[ ] federal funding and accept[ ] federal Medicare and state Medicaid" located, respectively, in Albany, Glens Falls, and Saratoga Springs, New York. (Dkt. No. 45, ¶¶ 4–6). Albany Med owns Glens Falls Hospital, Saratoga Hospital, and Malta Med. (Id. ¶¶ 3, 7, 9).

As to the individual Defendants, Dr. Jonathan Braiman, is a neurologist in the Department of Neurology at Glens Falls Hospital. (Id. ¶ 2). Donna Kirker, MS, RN, NEA-BC, Dr. [ ] Braiman's superior [and] is the Sr. Vice President/Patient Services and Chief of Nursing at Glens Falls Hospital." (Id. ¶ 5). "Lisa West is the Administrative Director of Emergency Services" and "Chief Nursing Officer" at Saratoga Hospital." (Id. ¶¶ 6, 83). Christine Calistri "is a nurse practitioner employed by Malta Med." (Id. ¶ 8).

### B. September 14, 2022 – Neurologist Jonathan Braiman, M.D.

On or about September 14, 2022, Plaintiff was seen by Dr. Braiman for a "comorbid condition to EDS known as cluster headaches." (Id. ¶¶ 2, 42–43, 45). Plaintiff and Dr. Braiman "discussed in detail current medications, medication allergies, past failed treatments for cluster headaches, EDS, and comorbid conditions." (Id. ¶ 46). "Dr. Braiman informed the Plaintiff that safe, effective treatments were available for cluster headaches, however he could not prescribe them to the Plaintiff, claiming that her health insurance company would not cover any treatments that ... have the potential to cause birth defects." (Id. ¶ 47). Plaintiff responded that her insurance company fully covered ... the treatment her rheumatologist had prescribed for her autoimmune condition, including Cellcept, Mycophenolate, and Motefil, "and that these treatments" could cause birth defects. (Id. ¶ 48). As Dr. Braiman "looked up the side effects Cellcept can have on a fetus and read them aloud," Plaintiff began recording. [3] (Id. ¶ 51). Dr. Braiman asked Plaintiff what she would do in the event of a pregnancy and Plaintiff responded that "she would

have to get an abortion." (*Id.* ¶ 52). Plaintiff explained that her genetic doctor told her that pregnancy carried a high risk of complications, that there was a "high likelihood of passing the disorder onto offspring," and that it was impossible to test a fetus for EDS. (*Id.* ¶ 52). Dr. Braiman responded that there were "scans and tests" for birth defects, "but its trickier now with the way things are going" and that Plaintiff "should 'think deeply' ... about her current medication regimen ... due to its potential for birth defects, as well as her decision to terminate a non-consensual pregnancy." (*Id.* ¶¶ 54–55). Dr. Braiman also told Plaintiff that "she would need to bring her (male) partner in on the conversation regarding her medical care and treatment." (*Id.* ¶ 56). Plaintiff stated that "her partner had a vasectomy and that pregnancy wasn't a concern." (*Id.* ¶ 57). When Plaintiff asked Dr. Braiman whether the "treatments he was unwilling to prescribe would be safe and effective for those who have gone through menopause and hence were no longer of childbearing age," he replied "Yeah, they would be." (*Id.* ¶ 58). When Plaintiff then asked Dr. Braiman whether "the only reason" he would not prescribe Plaintiff "these treatments" was because she "could get pregnant?" Dr. Braiman asked about her sleep. (*Id.* ¶ 58). "Dr. Braiman ... refused to tell the Plaintiff the names, risks, and benefits of all available treatments." (*Id.* ¶ 59). "Dr. Braiman suggested a number of off-label treatments that, as the Plaintiff had already discussed with Dr. Braiman, she had already tried and failed." (*Id.* ¶ 61). "Dr. Braiman informed the Plaintiff that he would not be willing to prescribe any medication to her that had the potential to cause birth defects." (*Id.* ¶ 66).

3      Plaintiff has submitted the recording as Exhibit U to the Amended Complaint. (Dkt. No. 45, ¶ 51).

 **\*3**  "On September 15, 2022, Plaintiff made a formal complaint to the Glens Falls Hospital Patient Relations." (*Id.* ¶ 72). Plaintiff does not detail the content of her "formal complaint." [4]

4      In a letter to Plaintiff dated November 18, 2022, Sean Bain, MD, Glen Falls Vice President and Chief Medical Officer responded: "I understand your experience with our hospital has caused you great concern. It is always our goal to ensure patients are treated with dignity, respect and compassion, and I am sorry that we fell short of your expectations." (Dkt. No. 45, at 110). Dr. Bain stated that Glens Falls Hospital reviewed and investigated Plaintiff's "concerns," and that he reviewed Plaintiff's medical record and "spoke with the provider involved," and that:
   It was determined that the clinical decisions of the provider were appropriate. It is standard of care to inform patients of contraindications and side effects of specific medications ... and it is within a provider's discretion to make prescription decisions based on this information. However, the provider does acknowledge that there were opportunities for a more sensitive and empathetic conversation.
   (*Id.*). Dr. Bain advised Plaintiff of her right to contact the New York State Department of Health or to submit a complaint to "DNV GL Healthcare." (*Id.*).

On or about September 22, 2022, Dr. Braiman sent a Aimovig, a medication, to "Plaintiff's pharmacy without her consent or discussing the risks and benefits of the medication." (*Id.* ¶ 62). Plaintiff returned the Aimovig to the pharmacy after reading the warnings and side effects, which included "serious injury or death." (*Id.* ¶ 65).

**C. September 21, 2022 – Malta Med Emergent Care**

On September 21, 2022, Plaintiff was experiencing "complications due to the untreated cluster headaches and went to the emergency department at Malta Med Emergent Care." (Dkt. No. 45, ¶ 73). Plaintiff's "vitals ... were dangerously out of range due to the pain of the untreated condition" and she arrived at the emergency department "crying, sweating, shaking," with "heightened blood pressure and pulse due to the pain." (*Id.* ¶ 73–74). Plaintiff was seen by Defendant Christine Calistri, a nurse practitioner. (*Id.* ¶ 75). Plaintiff received "one round of non-narcotic migraine cocktail and oxygen therapy, which did not stabilize her condition." (*Id.* ¶ 76). Calistri "ordered additional IV medications ... as soon as Plaintiff's initial IV bag was finished." (*Id.* ¶ 77). A nurse "informed Plaintiff that she was being discharged from Malta Med Emergent Care without transfer because Glens Falls Hospital called them and told them to discharge Plaintiff for "live streaming." (*Id.* ¶ 78). When Plaintiff asked for "additional information," The nurse stated "she was not sure" and would send in Calistri. (*Id.* ¶ 79). "Plaintiff began recording on her cell phone." (*Id.* ¶ 80).

2024 WL 4042135

Calistri and the nurse returned to Plaintiff's room and "[a]rmed security guards walked over to the Plaintiff's room and stood outside the door in the hallway." (*Id.* ¶¶ 81–82). Calistri told Plaintiff that Kirker, at Glens Falls Hospital, had called Defendant Lisa West, at Saratoga Hospital, who called the Malta Med "Emergency Department Director," who called the Malta Med "Emergency Care Charge Nurse" to say that Plaintiff "was live streaming." [5] (*Id.* ¶ 83). "Plaintiff was not live streaming and denied the allegations." (*Id.* ¶ 84). When Plaintiff asked "how anyone from another hospital system would know that she was in the emergency department," Calistri said "[t]hey looked you up on the tracker" and "gave your room number" and the nurse added that "[w]e searched your name." (*Id.* ¶¶ 85–86). Calistri told Plaintiff "that live streaming in the hospital was '100% illegal.' " [6] (*Id.* ¶ 87). Plaintiff continued to deny live streaming and Calistri told Plaintiff: "I don't know what you did, and I don't really care because you're lying (about live streaming)" "[y]ou can take it up with security and our legal department." (*Id.* ¶¶ 89–90).

[5]     "Malta Med Emergent Care's audit trail noted that Defendant Lisa West had called Malta Med Emergent Care and spoke to the Charge Nurse and the Defendant Christine Calistri and provided the Plaintiff's room number as well as instructions to ask the Plaintiff to, 'stop live streaming or to be escorted off premises.' " (Dkt. No. 45, ¶ 91; *see also* Dkt. No. 45, at 115 (nurse notes stating "Lisa West called in regards to a patient live streaming in our facility gave the patients [sic] name and room number. Writer was informed that Lisa got a call from Glens Falls who calledand [sic] Saratoga who told her the patient was live streaming was inform [sic] to encourage patient to stop live streaming or to be escorted off premises")).

[6]     Neither Malta nor Albany Med had "policies regarding social media use on September 21, 2022." (Dkt. No. 45. ¶ 84).

 **\*4**  The "additional treatment ordered while Plaintiff was in the emergency room on September 21, 2022 were [sic] canceled immediately following the call from Defendant Lisa West, and ... this action was signed off on by" Calistri. (*Id.* ¶ 104). Medical records from September 21, 2022 state that after the first "migraine cocktail" of Reglan, Toradol, and Benadryl, Plaintiff reported "minimal improvement" and was given additional Toradol, and that "[a]fter another hour and half [Plaintiff] reported improvement" from an 8 to a "6 out of 10" and stated "this is typical and she at this point would like to be discharged." (*Id.* at 128). Plaintiff claims this was "false and contradicted notes input to the hospital's pharmacy for additional treatment." (Dkt. No. 45, ¶ 105 (citing Dkt. No. 45, at 124)). [7] "At the time Plaintiff was being asked to leave the premises, Plaintiff was not stabilized and records indicate her blood pressure and pulse were still abnormally high." (*Id.* ¶ 93) (citing Dkt. No. 45, at 111 (vital signs noted at 4:39 p.m., pulse 90 and blood pressure 140/81)).

[7]     The "pharmacy" "notes" that Plaintiff refers to do not necessarily show a "contradiction." These "notes" are a "Discharge Report" containing an "Audit Trail of Events," and show little more than an "Order" for Benadryl at 1:50 p.m. by Calistri and "Discontinue in PHA" by "Scheduler" at 1:51 p.m., and an "Order" for Toradol by Calistri at 3:11 p.m. and "Discontinue in PHA" by "Scheduler" at 3:12 p.m. (Dkt. No. 45, at 124). There are similar "Audit Trails" for earlier orders of Toradol and Reglan. (*Id.* at 125).

### D. "Forged" Insurance Documents

Plaintiff was billed "for services that were never provided" at Malta Med as well as "additional treatment that had been ordered and subsequently canceled." [8] (Dkt. No. 45, ¶ 107) (citing Dkt. No. 45, at 132 (bill from Malta Med for September 21, 2022 care)). Plaintiff's insurance company "denied the claim due to a lack of consent forms signed by the Plaintiff." (*Id.* ¶ 108). A "Patient Signature Page" listing the medications Plaintiff received, advises the patient to read through before signing and states "I have read and understand the instructions given to me by my caregivers." (Dkt. No. 45, at 134). "Verbalized" is written on the patient signature line, and dated "9/28/22" at 6:00 p.m. (*Id.*). Plaintiff did not authorize "[t]he consent documents" and they were "signed off by a provider whose name does not appear to be listed anywhere within the Albany Med Health System." (Dkt. No. 45, ¶ 112).

Rule v. Braiman, Not Reported in Fed. Supp. (2024)

2024 WL 4042135

8     Plaintiff alleges that "[i]nsurance documents ... show that Christine Calistri" attempted to bill Plaintiff for these services and medications. (Dkt. No. 45, ¶ 107). However, as the documents Plaintiff attached as exhibits reflect that the bill was from Malta Med and contain no indication that *Calistri* was responsible for billing, (Dkt. No. 45, at 132), the Court need not accept Plaintiff's allegations as true. *See Blau v. Allianz Life Ins. Co. of N. Am.*, 124 F. Supp. 3d 161, 176 n. 7 (E.D.N.Y. 2015) ("[W]here 'the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint.") (quoting *Barnum v. Millbrook Care Ltd. P'ship*, 850 F. Supp. 1227, 1232–33 (S.D.N.Y. 1994)).

### E. Google Review and Facebook Messages

On September 21, 2022, Plaintiff's "boyfriend left a negative Google review of the facility wherein he did not mention the plaintiffs [sic] name or any identifying information."[9] (Dkt. No. 45, ¶ 95). On September 30, 2022, Plaintiff's boyfriend "received a Facebook message" from Calistri disclosing "Plaintiff's private health information." (*Id.* ¶ 96); *see also* Dkt. No. 45, at 120 (message from Calistri stating "Do you understand I was given orders by my administration to confront Tara about posting a video? I knew nothing about her history with her care in Glens Falls .... As Tara's nurse practitioner, I did everything I knew how to do to help her feel better."). Calistri further stated that she was receiving threats from Plaintiff's social media followers and that she feared for her children's safety. (Dkt. No. 45, at 120). On October 1, 2022, Calistri sent Plaintiff's boyfriend another Facebook message: "Since she has shared my above note that I sent to you privately and I am now getting more threats, please have her share your comments that you posted publicly on the Maltmed google reviews. It's no mystery who you are." (Dkt. No. 45, ¶ 98; Dkt. No. 45, at 121).

9     Although Plaintiff does not identify it as such, there appears to be a screenshot of the Google review attached to the Amended Complaint. (Dkt. No. 45, at 121).

### F. Attempts to Find New Neurologist

**\*5** On or about October 25, 2022, Plaintiff was denied as a new patient by Saratoga Headache Center[10] even though it was accepting new patients at the time. (Dkt. No. 45 ¶ 119). Medical contact notes indicate that on October 21, 2022, Plaintiff asked one of her providers for a referral to Dr. Jackson at Saratoga Headache and a referral was faxed that day. (Dkt. No. 45, at 178). Approximately two hours after the referral was faxed, Dr. Jackson called Plaintiff's provider "to speak regarding this pt.," and subsequently told Plaintiff's provider that he "is not taking on this patient he believes her case isn't qualified for their care" and that Plaintiff "would need to go to a different neurologist." (*Id.* at 178).

10     Saratoga Headache Center is a partner company of Albany Med, Saratoga Hospital, and Glens Falls Hospital. (Dkt. No. 45, ¶ 119).

December 15, 2022, Plaintiff's primary care provider, Marc Price, DO, an employee of Albany Med, "cut[ ] [Plaintiff] off from all medications and medical services with no legitimate reason and without notice." (Dkt. No. 45, ¶ 120). In a letter to Plaintiff dated December 15, Dr. Price wrote: "It is with regret that this letter serves to officially inform you that Family Medicine of Malta will no longer be able to provide medical care for you at this time." (Dkt. No. 45, at 181).

### G. Damages

On September 29, 2023, Plaintiff filed the present action. (Dkt. No. 1). Plaintiff claims that the actions by Kirker, West, and Calistri in accusing her of live streaming and asking her to leave the emergency department have caused "severe emotional distress" and that Calistri "caused interpersonal struggles between the plaintiff and her boyfriend as a result of her Facebook messages which caused the plaintiff and her boyfriend serious emotional distress." (Dkt. No. 45, ¶¶ 235–36). In addition, Plaintiff "has developed PTSD," and has "experienced significant emotional and physical harm, pain and suffering, additional medical expenses as she is too afraid to go to any local hospital due to the retaliatory actions of multiple local hospital systems and frequently travels out of state for medical care." (*Id.* ¶¶ 325–26).

## III. STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.' " *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.' " *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2, 2017 U.S. Dist. LEXIS 155140 (S.D.N.Y. Sept. 22, 2017) (Nathan, J.) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). A court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. Finally, a *pro se* plaintiff's complaint "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)).

## IV. DISCUSSION

### A. Affordable Care Act (First Cause of Action)

**\*6** Defendants move to dismiss Plaintiff's ACA claim on the grounds that it fails to allege sex or age-based discrimination and that it fails to allege retaliation for engaging in protected activity under the ACA. (Dkt. No. 63-5, at 13–16; Dkt. No. 68-4, at 16–20; Dkt. No. 66-1, at 12–13). Dr. Braiman seeks dismissal of the ACA claim against him on the ground that there is no individual liability under the ACA. (Dkt. No. 68-4, at 15–16). Defendants also seek dismissal of emotional distress and punitive damages, asserting that there is no right to recovery for such damages under the ACA. (Dkt. No. 63-5, at 16–17; Dkt. No. 68-4, at 20). Plaintiff opposes Defendants' motions. (Dkt. No. 74, at 10–11; Dkt. No. 75 at 7–9; Dkt. No. 76, at 5–7).

The ACA "outlaws discrimination" "by healthcare entities receiving federal funds" on the grounds prohibited by Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., (race, color, and national origin discrimination), Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq., (sex-based discrimination), the Rehabilitation Act, 29 U.S.C. § 794, (disability discrimination), or the Age Discrimination Act of 1975, 42 U.S.C. § 6101 et seq., (age discrimination). *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 218, 142 S.Ct. 1562, 212 L.Ed.2d 552 (2022) (citing 42 U.S.C. § 18116). It is "beyond dispute that private individuals may sue to enforce" these antidiscrimination statutes. *Id.* at 218, 142 S.Ct. 1562 (quoting *Barnes v. Gorman*, 536 U.S. 181, 185, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002)).

Courts analyze ACA claims under the framework applicable to the statute corresponding to the discrimination alleged. *See Klaneski v. Bristol Hosp., Inc.*, No. 22-cv-1158, 2023 WL 4304925, at *4, 2023 U.S. Dist. LEXIS 113107 (D. Conn. June 30, 2023) ("The Supreme Court in *Cummings* noted that the Affordable Care Act 'incorporates the rights and remedies' provided by the statutes it incorporates." (quoting *Cummings*, 596 U.S. at 218, 142 S.Ct. 1562)). Thus, where, as here, Plaintiff claims sex, age, and disability discrimination, the Court analyzes her claims under the framework applicable to Title IX, the Age Discrimination Act, and the Rehabilitation Act. *See id.* 2023 WL 4304925, at *3–4, 2023 U.S. Dist. LEXIS 113107 (analyzing the plaintiff's claims for discrimination based on gender identity or expression and discrimination based on sex under Title IX).

### 1. Individual Defendants

Dr. Braiman seeks dismissal on the ground that individuals may not be held liable under the Affordable Care Act. (Dkt. No. 68-4, at 15–16). The Court agrees. Indeed, there is no individual liability under Title IX, Title VI, the Age Discrimination Act, or the Rehabilitation Act. *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257, 129 S.Ct. 788, 172 L.Ed.2d 582 (2009)

Case 1:26-cv-00228-MAD-CBF   Document 5   Filed 04/13/26   Page 33 of 65

Rule v. Braiman, Not Reported in Fed. Supp. (2024)
2024 WL 4042135

("Title IX reaches institutions and programs that receive federal funds, 20 U.S.C. § 1681(a), which may include nonpublic institutions, § 1681(c), but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals."). Further, the Affordable Care Act, which was enacted pursuant to Congress' authority under the Spending Clause, *see Cummings*, 596 U.S. at 220, 142 S.Ct. 1562 (describing the ACA as a "Spending Clause statute[ ]"), allows the imposition of liability on certain recipients of federal funding, *cf. Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 640–41, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (holding that for Title IX, "enacted pursuant to Congress' authority under the Spending Clause," "[t]he Government's enforcement power may only be exercised against the funding recipient"); *see Abadi v. NYU Langone Health Sys.*, 705 F.Supp.3d 172, 188 (S.D.N.Y. 2023) (denying amendment to include claim under ACA on grounds of futility, explaining that such claim lacks merit as it is "consistent only with claims brought against NYU Langone, not individual defendants."); *Rightmyer v. Philly Pregnancy Ctr., P.C.*, No. 23-cv-1925, 2024 WL 897983, at *3, 2024 U.S. Dist. LEXIS 35906 (E.D. Pa. Mar. 1, 2024) (granting the individual defendants' motion to dismiss the plaintiff's ACA claim alleging racial discrimination (Title VI), noting that Third Circuit precedent held that entities, not individuals could be sued under Title VI); *Owens v. Pearl River Cmty. Coll.*, No. 21-cv-140, 2022 WL 1434651, at *11, 2022 U.S. Dist. LEXIS 81530 (S.D. Miss. May 5, 2022) ("Because Plaintiff cannot state a claim for individual liability under Title VI, Title IX, the Rehabilitation Act, or the ADA, Plaintiff cannot state such a claim under [the Affordable Care Act]."). Accordingly, to the extent Plaintiff asserts an Affordable Care Act claim against the individual Defendants, such claims are dismissed.

### 2. Sex-Based Discrimination

**\*7** Albany Med, Saratoga Hospital, Glens Falls Hospital, and Malta Med (the "Hospital Defendants") [11] move to dismiss on the ground that Plaintiff fails to allege sex-based discrimination, arguing that Plaintiff by her "own account," alleges that Dr. Braiman withheld treatment because of concerns regarding "medical appropriateness." (Dkt. No. 66-1, at 12). They assert that to the extent Plaintiff contends she "should have been prescribed a medication regardless of the fact that she was a woman of childbearing age, that is a question about the professional standard in that medical situation, and not a question of discrimination." (*Id.*).

[11]     The Hospital Defendants' briefing does not meaningfully address the basis for liability of the four entities Plaintiff sues: Albany Med, Saratoga Hospital, Glens Falls Hospital, or Malta Med. Accordingly, the Court addresses Plaintiff's claims against the Hospital Defendants as a collective, without considering the theories of liability under which they may be liable, such as vicarious liability, (Dkt. No. 66-1, at 26) as a "partner" of Albany Med, (*see* Dkt. No. 45, ¶ 12). Moving forward, the parties should endeavor to identify the proper Defendants for each claim.

The Second Circuit has held that "a complaint under Title IX, alleging that the plaintiff was subjected to discrimination on account of sex ... is sufficient with respect to the element of discriminatory intent, like a complaint under Title VII, if it pleads specific facts that support a minimal plausible inference of such discrimination." *Doe v. Columbia Univ.*, 831 F.3d 46, 56 (2d Cir. 2016).

There may be, as the Hospital Defendants contend, a "wide range of legitimate factors" that informed Dr. Braiman's decision not to prescribe certain medications to Plaintiff. *Klaneski*, 2023 WL 4304925, at *5, 2023 U.S. Dist. LEXIS 113107. However, drawing all inferences in Plaintiff's favor, the allegations that Dr. Braiman questioned Plaintiff about what she would do in the event of a pregnancy and told her that she should "think deeply" about her current medication regimen, which included a medication that could cause birth defects, as well as any decision to terminate a pregnancy, and that she "would need to bring her (male) partner in on the conversation regarding her medical care and treatment," (Dkt. No. 45, ¶¶ 47–56), allow a plausible inference that Dr. Braiman's decision not to prescribe an otherwise appropriate medication was based on impermissible sex-based discrimination. *Cf., e.g., Klaneski*, 2023 WL 4304925, at *5–6, 2023 U.S. Dist. LEXIS 113107 (granting the plaintiff leave to amend claim that hospital pharmacy's failure to stock progesterone constituted intentional discrimination against transgender females under the ACA, recognizing that although a "wide range of legitimate factors likely contribute to a hospital's decision to stock particular medications" such issues raise "factual matters that the Court should not resolve at the pleading stage"). As

Case 1:26-cv-00228-MAD-CBF   Document 5   Filed 04/13/26   Page 34 of 65

Rule v. Braiman, Not Reported in Fed. Supp. (2024)
2024 WL 4042135

### 3. Retaliation

The Hospital Defendants argue that the ACA does not support an independent cause of action for retaliation and that, in any event, Plaintiff fails to allege she engaged in protected activity. (Dkt. No. 66-1, at 12–13) (citing *Lucas by & through Lucas v. VHC Health*, No. 22-cv-00987, 2023 WL 5615970, at *5, 2023 U.S. Dist. LEXIS 153820 (E.D. Va. Aug. 30, 2023)). In *Lucas*, the Eastern District of Virginia dismissed the plaintiff's claim that the defendants retaliated against her because of her complaint of intentional discrimination, noting it was "unaware of any case law that supports an independent cause of action under Section 1557 of the ACA for retaliation." *Lucas*, 2023 WL 5615970, at *5. However, other courts have assumed the viability of such claims. *See*, *e.g.*, *Scott v. St. Louis Univ. Hosp.*, 600 F. Supp. 3d 956, 965 & n.2 (E.D. Mo. 2022) (applying Title IX standards to retaliation claim under the ACA, explaining "that when a funding recipient retaliates against a person *because* he complains of sex discrimination, this constitutes intentional 'discrimination' 'on the basis of sex,' in violation of Title IX") (quoting *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174, 125 S.Ct. 1497, 161 L.Ed.2d 361 (2005)). As Defendants proffer no analysis regarding their argument, the Court declines to dismiss on this basis at this time.

**\*8** The Hospital Defendants' second argument—that Plaintiff fails to allege that her complaint to Glens Falls Hospital following her appointment with Dr. Braiman "involved allegations protected by the Affordable Care Act"—is more fruitful. To state a claim of retaliation under Title IX, a plaintiff must show: "(1) protected activity by the plaintiff; (2) knowledge by the defendant of the protected activity; (3) adverse ... action; and (4) a causal connection between the protected activity and the adverse action." *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 91 (2d Cir. 2011). "A 'protected activity' 'refers to action taken to protest or oppose statutorily prohibited discrimination,' and includes a wide range of activities, like reporting discrimination, testifying in a proceeding, or otherwise participating in an investigation about discrimination." *Castro v. Yale Univ.*, 518 F. Supp. 3d 593, 611 (D. Conn. 2021) (quoting *Siuzdak v. Sessions*, 295 F. Supp. 3d 77, 96 (D. Conn. 2018)).

Here, Plaintiff alleges that on September 15, 2022 she "made a formal complaint to Glens Falls Hospital Patient Relations." (Dkt. No. 45, ¶ 72). As Plaintiff does not allege any facts about what she wrote in the complaint, and there is nothing in the response she received from Glens Falls Hospital that illuminates the nature of her complaint, (Dkt. No. 45, at 110) (recognizing Plaintiff's "concerns" and the need for a "more sensitive and empathetic conversation"), Plaintiff fails to allege facts suggesting she complained about sex-based discrimination or engaged in conduct otherwise protected by Title IX. *See Sutton v. Stony Brook Univ.*, No. 18-cv-7434, 2020 WL 6532937, at *10, 2020 U.S. Dist. LEXIS 206999 (E.D.N.Y. Nov. 5, 2020) (dismissing Title IX retaliation claim, explaining that the plaintiff's alleged complaints about a "personal beef" "contained no references to gender-based discrimination or sexual harassment" and thus failed to allege protected activity under Title IX); *see also*, *e.g.*, *O'Connor v. New York State Dep't of Fin. Servs.*, No. 21-cv-00828, 2022 WL 3998099, at *7, 2022 U.S. Dist. LEXIS 157933 (N.D.N.Y. Sept. 1, 2022) (finding that the plaintiff's "conclusory allegations" were "devoid of any facts that would allow an inference that Plaintiff complained of disability discrimination" and that there was therefore "no basis to infer that Plaintiff's vague complaints constituted protected activity under the Rehabilitation Act"). Thus, Plaintiff has failed to allege facts that would allow a plausible inference that she engaged in protected activity. Accordingly, Plaintiff's retaliation claim is dismissed.

### 4. Damages

Defendants properly argue that emotional distress and punitive damages are unavailable under the Affordable Care Act. In *Cummings v. Premier Rehab Keller, P.L.L.C.*, the Supreme Court held that "emotional distress damages are not recoverable" under the Rehabilitation Act and the Affordable Care Act, the two "Spending Clause antidiscrimination statutes" under consideration in that case. 596 U.S. 212, 230, 142 S.Ct. 1562, 212 L.Ed.2d 552 (2022); *see also id.* at 216, 142 S.Ct. 1562 (noting that punitive damages are also unavailable (citing *Barnes v. Gorman*, 536 U.S. 181, 189, 122 S.Ct. 2097, 153 L.Ed.2d

230 (2002)). The Court reasoned that "Spending Clause legislation operates based on consent" and therefore that the "scope of available remedies" depends on whether a prospective funding recipient would have been aware that it might face such liability. *Id.* at 219–20, 142 S.Ct. 1562. Because it is "hornbook law that 'emotional distress is generally not compensable in contract,' " the Court could not "treat federal funding recipients as having consented to be subject to damages for emotional distress," and such damages therefore are not recoverable under the Rehabilitation Act and ACA. *Id.* at 221–22, 142 S.Ct. 1562 (citation omitted). Accordingly, Plaintiff's claims for emotional distress and punitive damages under the ACA are dismissed.

### B. Title II of the Civil Rights Act and Title IX (Second Cause of Action)

**\*9** Dr. Braiman and the Hospital Defendants move to dismiss Plaintiff's Second Cause of Action, which, read liberally, appears to allege a claim under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a and Title IX. (Dkt. No. 45, at 23–31). Plaintiff opposes Defendants' motion. (Dkt. No. 76, at 7–14).

### 1. Title II of the Civil Rights Act of 1964

Title II of the Civil Rights Act of 1964 provides: "All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation ... without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). However, Plaintiff fails to allege discrimination based on race, color, religion, or national origin. And to the extent Plaintiff seeks to assert a discrimination claim based on sex, Title II is inapplicable. *See Antonetti on Behalf of C.J.A. v. Dave & Busters 42nd St. Times Square*, No. 23-cv-0101, 2023 WL 1869012, at \*4, 2023 U.S. Dist. LEXIS 22487 (S.D.N.Y. Feb. 6, 2023) (finding the plaintiff's Title II claim fails "because Title II, by its own terms, does not protect against gender discrimination") (collecting cases). Accordingly, Plaintiff's Title II claim is dismissed.

### 2. Title IX

The Hospital Defendants assert that to the extent Plaintiff asserts a claim of sex-based discrimination under Title IX, it must be dismissed because Plaintiff fails to allege she experienced any discrimination in connection with an educational institution. (Dkt. No. 66-1, at 14–15 & n.4). Plaintiff opposes dismissal. (Dkt. No. 76, at 7).

"A threshold issue" in any Title IX case is whether the defendant "is 'an education program or activity receiving Federal financial assistance.' " *Romero v. City of New York*, 839 F. Supp. 2d 588, 613 (E.D.N.Y. 2012) (quoting 20 U.S.C. § 1681). Thus, "in order to implicate Title IX in the first instance, an entity must have features such that one could reasonably consider its mission to be, at least in part, educational." *O'Connor v. Davis*, 126 F.3d 112, 117 (2d Cir. 1997). Here, the only conduct alleged in the Amended Complaint that could arguably fall under Title IX is Dr. Braiman's allegedly gender-based denial of prescription medicine to Plaintiff on September 14, 2022.[12] According to the Amended Complaint, Dr. Braiman is employed by the Neurology Department at Glens Falls Hospital, a voluntary non-profit private hospital owned by Albany Med. (Dkt. No. 45, ¶ 2). Plaintiff alleges that "Albany Medical Center and Albany Med[ ] provide educational programs and services as an integral part of their mission," including "medical training, clinical education, internships, residencies, or other educational activities," and "receives federal funding specifically for educational programs." (Dkt. No. 45, at 27). However, the Amended Complaint is devoid of allegations that the Glens Falls Hospital has any educational "features," *see Davis*, 126 F.3d at 117, or that Glens Falls Hospital has any connection to the educational component of Albany Med beyond being owned by Albany Med. *Cf., Castro v. Yale Univ.*, 518 F. Supp. 3d 593, 604–05 (D. Conn. 2021) (finding allegations that the contractual arrangement between the defendant hospital and university "formally integrat[ed] the hospital with the university to share both staff and resources" and that the hospital received "federal funding because of its status as a teaching hospital" were sufficient to demonstrate hospital was subject to Title IX); *see also Gillen v. Borough of Manhattan Cmty. Coll.*, No. 97-cv-3431, 1999 WL 221105, at \*3, 1999 U.S. Dist. LEXIS 4862 (S.D.N.Y. Apr. 14, 1999) (finding that because complaint did not set out the relationship between the

defendant labor union and the defendant community college or the defendant university and did not specify "who among the Defendants would constitute a recipient of federal funds," there was no basis to infer that the defendant labor union, which represented college/university employees, was subject to Title IX); *Romero v. City of New York*, 839 F. Supp. 2d 588, 614 (E.D.N.Y. 2012) (rejecting, at summary judgment, the plaintiff's argument that the defendant department was subject to Title IX as an "agent of the city, which operates educational programs and received federal funding, explaining that there were no facts suggesting that the department's mission was educational, and that without more, the city's receipt of "federal funding and operat[ion of] educational programs or activities does not mandate a finding that all of its various departments ... and the subdivisions of those departments ... are subject to Title IX"). Thus, Plaintiff's Title IX claim is dismissed.

12    The Court recognizes that a plaintiff may bring a retaliation claim under Title IX. Here, however, Plaintiff fails to allege protected conduct and thus fails to state a retaliation claim.

**\*10** Accordingly, Defendants' motion to dismiss Plaintiff's Title IX claim (Second Cause of Action) is granted.

### C. Age Discrimination Act of 1975 (Third Cause of Action)

Dr. Braiman and the Hospital Defendants move to dismiss Plaintiff's claim of discrimination under the Age Discrimination Act of 1975, 42 U.S.C. § 6101 et seq., on the grounds that Plaintiff has failed to allege exhaustion of administrative remedies and that the Amended Complaint fails to state a claim for relief. (Dkt. No. 68-4, at 22; Dkt. No. 66-1, at 15–17). Plaintiff opposes Defendants' motions. (Dkt. No. 75, at 14; Dkt. No. 76, at 10–14)

Section 6102 of the Age Discrimination Act prohibits discrimination on the basis of age under any program or activity that receives federal financial assistance. 42 U.S.C. § 6102. "A plaintiff alleging a claim pursuant to the Act must first exhaust administrative remedies." *Esposito v. Hofstra Univ.*, No. 11-cv-2364, 2012 WL 607671, at \*4, 2012 U.S. Dist. LEXIS 2397 (E.D.N.Y. Feb. 24, 2012) (citing 42 U.S.C. § 6104(f)). Section 6104(e)(1) provides:

> When any interested person brings an action in any United States district court for the district in which the defendant is found or transacts business to enjoin a violation of this Act by any program or activity receiving Federal financial assistance, such interested person shall give notice by registered mail not less than 30 days prior to the commencement of that action to the Secretary of Health and Human Services, the Attorney General of the United States, and the person against whom the action is directed.

43 U.S.C. § 6104(e)(1); *see also* 42 U.S.C. § 6104(f) (providing that "administrative remedies shall be deemed exhausted upon the expiration of 180 days from the filing of an administrative complaint during which time the Federal department or agency makes no finding with regard to the complaint, or upon the day that the Federal department or agency issues a finding in favor of the recipient of financial assistance, whichever occurs first"). Here, Plaintiff states in her opposition papers, that "she did submit [notice], by certified and registered mail, no less than 30 days prior to the commencement of [this action] to Health and Human Services and contacted the Attorney General and the state obudsman [sic]." (Dkt. No. 76, at 10). Defendants reply that even crediting this statement, Plaintiff fails to state that notice was provided to "the person against whom the action is directed." (Dkt. No. 78, at 8) (quoting 42 U.S.C. § 6104(e)(1)). The Court agrees. Section 6104(e)(1) requires that notice be provided to "the person against whom the action is directed," and here Plaintiff fails to allege that she provided notice to Dr. Braiman or the Hospital Defendants. Accordingly, Plaintiff's Age Discrimination Act claim is dismissed. *Lipsman v. Cortés-Vázquez*, No. 21-cv-4631, 2021 WL 5827129, at \*3, 2021 U.S. Dist. LEXIS 234203 (S.D.N.Y. Dec. 7, 2021) (dismissing Age Discrimination Act claim where the plaintiff "did not satisfy the notice and exhaustion requirements of the statute"); *Morales v. SUNY Purchase Coll.*, No. 14-cv-8193, 2015 WL 7430864, at \*4, 2015 U.S. Dist. LEXIS 157314 (S.D.N.Y. Nov. 19, 2015) ("Without giving the required notice, Plaintiff's [Age Discrimination Act] claim is improperly filed and requires dismissal.").

Case 1:26-cv-00228-MAD-CBF    Document 5    Filed 04/13/26    Page 37 of 65

Rule v. Braiman, Not Reported in Fed. Supp. (2024)
2024 WL 4042135

### D. Patient Self-Determination Act (Fourth Cause of Action)

**\*11**  Dr. Braiman, Albany Med, and Glens Falls Hospital move to dismiss Plaintiff's claim under the Patient Self-Determination Act, 42 U.S.C. § 1395cc(f) on the ground that it does not create a private right of action. (Dkt. No. 68-4, at 22–23; Dkt. No. 66-1, at 18–19). Plaintiff opposes Defendants' motion. (Dkt. No. 76, at 14–15).

The Second Circuit has instructed that a "court must 'begin [its] search for Congress's intent with the text and structure' of the statute, and cannot ordinarily conclude that Congress intended to create a right of action when none was explicitly provided." *Olmsted v. Pruco Life Ins. Co. of New Jersey*, 283 F.3d 429, 432 (2d Cir. 2002) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 288, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001)). As the Seventh Circuit described it, the provision at issue here, Section 1395cc(f), requires that a "hospital that accepts Medicare and Medicaid payments must give an adult individual who is 'receiving medical care' as an inpatient written material explaining the rights to refuse treatment and to create an advance directive under state law." *Winfield v. Mercy Hosp. & Med. Ctr.*, 591 F. App'x 518, 519 (7th Cir. 2015) (citing 42 U.S.C. §§ 1395cc(f)(1), (2)(A)). Courts have found that no express private right of action in 42 U.S.C. § 1395cc in general, or in the written materials requirement set forth in § 1395cc(f), in particular. *Wentz v. Kindred Hosps. E., L.L.C.*, 333 F. Supp. 2d 1298, 1301, 1303 (S.D. Fla. 2004) (finding "§ 1395cc contains no express" or implied right of action); *Winfield v. Mercy Hosp. & Med. Ctr.*, 591 F. App'x 518, 519 (7th Cir. 2015) (observing that the district court found no explicit private right of action); *Asselin v. Shawnee Mission Med. Ctr., Inc.*, 894 F. Supp. 1479, 1485 (D. Kan. 1995) (noting that it had previously found that 42 U.S.C. § 1395cc(f)(1)(A) and § 1395cc(f)(2)(A) "do not afford plaintiff a private cause of action" and further finding "no implied private cause of action"). Further, Plaintiff does not argue that there is an implied private right of action under § 1395cc(f), *see Olmstead*, 283 F.3d at 433 ("A strong presumption that Congress did not intend a private right of action places a heavy burden on the plaintiffs to demonstrate otherwise."), and the Court is not aware of any case finding an implied right of action, *see, e.g.*, *Myers v. UCSF Med. Ctr.*, No. 22-cv-07813, 2023 WL 6202065, at \*5, 2023 U.S. Dist. LEXIS 169630 (N.D. Cal. Mar. 2, 2023) ("Nor has the undersigned found any case in which a court has held that the PSDA implicitly creates a private right of action."), *report and recommendation adopted*, 2023 WL 6202063, 2023 U.S. Dist. LEXIS 172197 (N.D. Cal. June 22, 2023). Accordingly, Plaintiff's Patient Self-Determination Act claim [13] is dismissed. [14]

[13]    The Hospital Defendants note Plaintiff's citation to "New York Public Health Law Article 29-B – Patients' Bill of Rights" under the Fourth Cause of Action in the Amended Complaint. (Dkt. No. 45, at 37–38). Plaintiff outlines the provisions of this New York law in the Amended Complaint, but does not appear to assert a cause of action under the "Patients' Bill of Rights." Nor does Plaintiff mention the "Patients' Bill of Rights" in her opposition. (*See* Dkt. No. 76). Accordingly, the Court does not read the Amended Complaint as attempting to assert such a claim.

[14]    In her submissions, Plaintiff cited a number of cases that the Court and defense counsel were unable to find or verify, including "Delany v. Cade (5th Cir. 1994)," which Plaintiff cited for the proposition that the Fifth Circuit "allowed a private cause of action under the [Patient Self-Determination Act]." (Dkt. No. 75, at 14; *see* Dkt. No. 81, at 8 (Defendants explaining that "[u]pon thorough review ... no such case exists")). To the extent Plaintiff intended to cite the Tenth Circuit case, *Delaney v. Cade*, 986 F.2d 387 (10th Cir. 1993), it offers no support for her position. Plaintiff also cited "Acosta v. Byrum (M.D. Tenn. 2008)," (Dkt. No. 45, ¶ 326), and although the Court located a case by the same name, it is not a federal district court case, but a case from the Court of Appeals of North Carolina, *Acosta v. Byrum*, 180 N.C.App. 562, 638 S.E.2d 246 (N.C. Ct. App. 2006), applying North Carolina law. Other cases Plaintiff cited in her submissions that the defense counsel or the Court were unable to locate or verify include: "Swafford v. Maricop County Public Hospital," "Tatum v. Black (1991)," "Estate of Behringer v. WCA Hospital (2013)," "Oliveira v. Providence Health System of Southern California (2004)," and "Roe v. Lewisville Memorial Hospital (2008)," (Dkt. No. 45, ¶ 279); and "Zinman v. Shalala (D.N.J. 2003)," "Knepper v. Ogden Regional Medical Center (D. Utah 2006)," and "Dwyer v. American Express Co. (S.D.N.Y. 2007)," (Dkt. No. 45, ¶ 326). In any future filings Plaintiff must include a full citation of any case cited. The Court will not consider any case that is only cited with the parties' names and the date of the case; every case cite must include a citation to the reporter or online legal service, like Westlaw or LexisNexis, or the court and court case number and docket number where the case may be found. The Court notes that "ChatGPT and similar

Case 1:26-cv-00228-MAD-CBF   Document 5   Filed 04/13/26   Page 38 of 65

Rule v. Braiman, Not Reported in Fed. Supp. (2024)

2024 WL 4042135

AI programs are capable of generating fake case citations and other misstatements of law." *Dukuray v. Experian Info. Sols. (Dukuray I)*, No. 23-cv-9043, 2024 WL 3812259, at *11–12, 2024 U.S. Dist. LEXIS 132667 (S.D.N.Y. July 26, 2024), *adopted by Dukuray v. Experian Info. Sols. (Dukuray II)*, 2024 WL 3936347, 2024 U.S. Dist. LEXIS 152287 (S.D.N.Y. Aug. 26, 2024). **Plaintiff is warned that any future filings "with citations to nonexistent cases may result in sanctions, such as her submissions being stricken, filing restrictions or monetary penalties being imposed, or the case being dismissed."** *Dukuray,* 2024 WL 3812259 at *12, 2024 U.S. Dist. LEXIS 132667; *see also Dukuray II*, 2024 WL 3936347, at *4, 2024 U.S. Dist. LEXIS 152287 (same).

### E. Federal Criminal Statutes (Fifth, Seventh, and Ninth Causes of Action)

**\*12** Dr. Braiman and the Hospital Defendants move to dismiss Plaintiff's claim that they made "false statements relating to healthcare," in violation of 18 U.S.C. § 1035, (Dkt. No. 68-4, at 23–24), Kirker, West, Calistri, and Albany Med move to dismiss Plaintiff's claims under 18 U.S.C. §§ 241 (conspiracy against rights), 242 (deprivation of rights under color of law), 371 (conspiracy), (Dkt. No. 63-5, at 19–20; Dkt. No. 66-1, at 21), and Defendants Calistri, Albany Med, and Malta Med move to dismiss Plaintiff's claims under 18 U.S.C. § 1347 (health care fraud), (Dkt. No. 63-5, at 33–34; Dkt. No. 66-1, at 21). Defendants seek dismissal on the ground that there is no private right of action under the federal criminal statutes on which Plaintiff relies. (Dkt. No. 63-5, at 19–20; Dkt. No. 68-4, at 23–24; Dkt. No. 66-1, at 21). Plaintiff opposes dismissal. (Dkt. No. 74, at 11–12; Dkt. No. 75, at 14; Dkt. No. 76, at 16).

Section 1035, which criminalizes false statements relating to healthcare, does not provide a private right of action. *See Rodriguez v. Dougherty*, No. 23-cv-1542, 2024 WL 896752, at *9, 2024 U.S. Dist. LEXIS 36056 (D. Conn. Mar. 1, 2024) (dismissing the plaintiff's claim that various defendants violated his rights under several federal criminal statutes, including 18 U.S.C. § 1035, on the ground that the statutes at issue did not provide a private right of action). Plaintiff's claims based on Defendants' alleged violation of other federal criminal statutes, 18 U.S.C. §§ 241, 242, 371, 1347 likewise fail. *Dyce v. Doe*, No. 23-cv-8730, 2024 WL 1468305, at *2, 2024 U.S. Dist. LEXIS 62419 (E.D.N.Y. Apr. 4, 2024) ("To the extent that Plaintiff seeks to invoke the Court's jurisdiction by bringing her claims under 18 U.S.C. § 242 ('Section 242'), a criminal civil rights statute, she may not do so. Section 242 does not provide a private right of action.") (citing *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009)); *see also Sheehy*, 335 F. App'x at 104 ("[C]laims based on the violation of federal criminal statutes, such as 18 U.S.C. §§ 241–242 ... are not cognizable, as federal criminal statutes do not provide private causes of action."); *Hom v. Brennan*, 840 F. Supp. 2d 576, 582 (E.D.N.Y. 2011) (explaining that "[t]he law in this Circuit is clear that there is no private right action under" 18 U.S.C. § 371) (citing cases); *Graham v. Yazdani*, No. 14-cv-6020, 2014 WL 5506719, at *1, 2014 U.S. Dist. LEXIS 154428 (E.D.N.Y. Oct. 31, 2014) (finding no private right of action under 18 U.S.C. § 1347). Accordingly, Plaintiff's claim under 18 U.S.C. §§ 241, 242, 371, 1035, 1347 are dismissed.

### F. HIPAA (Sixth Cause of Action)

Defendants Kirker, West, Calistri, and the Hospital Defendants move to dismiss Plaintiff's HIPAA claim on the ground that HIPAA does not provide a private right of action. (Dkt. No. 63-5, at 17–19; Dkt. No. 66-1, at 18–19). Plaintiff opposes dismissal. (Dkt. No. 74, at 11; Dkt. No. 76, at 14–15). The Second Circuit has held that "HIPAA confers no private cause of action, express or implied." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 244 (2d Cir. 2020). Accordingly, Defendants' motion to dismiss Plaintiff's HIPAA claim is granted.

### G. 42 U.S.C. § 1983 (Seventh Cause of Action)

Kirker, West, Calistri, and Albany Med move to dismiss Plaintiff's claim under 42 U.S.C. § 1983, including any allegation that Defendants violated Plaintiff's First Amendment rights, on the ground that the Amended Complaint fails to allege any Defendant is a "state actor." (Dkt. No. 66-1, at 21–23). Plaintiff opposes dismissal. (Dkt. No. 74, at 13–16; Dkt. No. 76, at 16).

It is well-settled that a plaintiff alleging a violation of her constitutional rights under Section 1983 must show state action. *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012); *see also* 42 U.S.C. § 1983 (imposing liability on persons who act "under color of any [state] statute, ordinance, regulation, custom, or usage"). While private parties generally are not state actors, their

Case 1:26-cv-00228-MAD-CBF   Document 5   Filed 04/13/26   Page 39 of 65

Rule v. Braiman, Not Reported in Fed. Supp. (2024)

2024 WL 4042135

conduct can be attributed to the state for Section 1983 purposes if "(1) the State compelled the conduct [the "compulsion test"], (2) there is a sufficiently close nexus between the State and the private conduct [the "joint action test" or "close nexus test"], or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the state [the "public function test"]." *Hogan v. A.O. Fox Mem'l Hosp.*, 346 F. App'x 627, 629 (2d Cir. 2009) (summary order) (citing *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)). The "fundamental question" for each test is whether the private party's conduct is "fairly attributable" to the state such that it bears responsibility. *Fabrikant*, 691 F.3d at 207.

**\*13** "Under the compulsion test, private behavior becomes state action if 'it results from the State's exercise of coercive power,' or 'the State provides significant encouragement, either overt or covert.' " *Jackson v. Barden*, No. 12-cv-1069, 2018 WL 340014, at \*14, 2018 U.S. Dist. LEXIS 3861 (S.D.N.Y. Jan. 8, 2018) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 296, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001)). Here, there are no allegations that the state was involved with the activities that occurred in the emergency department at Malta Med on September 21, 2022, or thereafter. Plaintiff alleges that Kirker and West acted on their individual authority and judgment, and that Calistri acted at Kirker and West's directions and on her own authority and judgment in telling Plaintiff to stop "live streaming" and discharging Plaintiff from the emergency department. *See Sybalski*, 546 F.3d at 257–58 (pleading that the "state was involved 'with the *activity that caused the injury*' giving rise to the action" is necessary to allege state action under the compulsion test (quoting *Schlein v. Milford Hosp., Inc.*, 561 F.2d 427, 428 (2d Cir. 1977))).

"The close nexus test attributes private action to the state when there is 'a sufficiently close nexus between the State and the challenged action of the [private] regulated entity so that the action of the latter may be fairly treated as that of the State itself.' " *McGugan v. Aldana-Bernier*, No. 11-cv-00342, 2012 WL 1514777, at \*5, 2012 U.S. Dist. LEXIS 60340 (E.D.N.Y. Apr. 30, 2012) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534, (1982)), *aff'd*, 752 F.3d 224 (2d Cir. 2014). This requirement assures "that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Blum*, 457 U.S. at 1004, 102 S.Ct. 2777. Thus, to satisfy the " 'joint action test' or 'close nexus test,' " a plaintiff must allege that "the state provides '*significant encouragement*' to the entity, the entity is a 'willful participant in *joint activity* with the [s]tate,' or the entity's functions are '*entwined*' with state policies." *Hollander v. Copacabana Nightclub*, 624 F.3d 30, 34 (2d Cir. 2010) (quoting *Sybalski*, 546 F.3d at 257). Here, however, there are no allegations that the Kirker, West, Calistri, or anyone from the Defendant Hospitals worked with state employees in connection with any interaction with, or decision they made regarding Plaintiff or her health care. *See McGugan*, 2012 WL 1514777, at \*6, 2012 U.S. Dist. LEXIS 60340 (finding "no sufficiently close nexus between the state and the defendant's decisions because the private hospital did not consult or contact state employees regarding the evaluation or commitment of plaintiff nor did state officials participate in the commitment process in any way").

According to the Amended Complaint, Kirker is the senior vice president of patient services and chief of nursing at Glens Falls Hospital, a private hospital. (Dkt. No. 45, ¶ 5). West is the Administrative Director of Emergency Services at Saratoga Hospital, a private hospital. (*Id.* ¶ 6). Calistri is a nurse practitioner, employed by Malta Med, a private hospital. (*Id.* ¶ 8). Other than allegations that each hospital receives federal funding and accepts federal Medicare and state Medicaid, there are no other factual allegations connecting these Defendants to the state. *See Lagueux v. Bridgeport Hosp. Sch. of Nursing*, No. 11-cv-01933, 2013 WL 1310557, at \*4, 2013 U.S. Dist. LEXIS 43211 (D. Conn. Mar. 27, 2013) ("Although the complaint contains references to federal funding received by one or more of the defendants, such funding does not demonstrate that those defendants were state actors.").

Nor has Plaintiff alleged facts establishing the applicability of the public function test. Plaintiff alleges that Defendants were acting in their capacity of as healthcare providers employed by Albany Med and its subsidiaries, that this employment "constitutes state action" and that the provision of "essential healthcare services" are "functions traditionally reserved to the state." (Dkt. No. 45, at 51–52). In general, "a private hospital will not be considered a state actor." *Giraldo v. United States*, No. 14-cv-5568, 2015 WL 1476409, at \*2, 2015 U.S. Dist. LEXIS 42746 (E.D.N.Y. Mar. 31, 2015). Further, as the Second Circuit has explained, although a hospital's activities "are clearly 'affected with a public interest,' the functions performed by it have not been 'traditionally associated with sovereignty,' and have long been relegated to the private domain, rather than treated as

'traditionally the exclusive prerogative of the State.' " *Schlein*, 561 F.2d at 429 (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 353, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974)). Accordingly, Plaintiff's claims under 42 U.S.C. § 1983 are dismissed.

### H. EMTALA (Eighth Cause of Action)

**\*14** Kirker, West, Calistri, Albany Med, and Malta Med move to dismiss Plaintiff's claims under EMTALA, 42 U.S.C. § 1395dd. (Dkt. No. 63-5, at 29–33; Dkt. No. 66-1, at 19–21). Plaintiff opposes Defendants' motions. (Dkt. No. 74, at 16; Dkt. No. 76, at 15;). Kirker, West, and Calistri move for dismissal on the ground that liability under EMTALA is available against hospitals, but not against individual healthcare providers. (Dkt. No. 63-5, at 31). Albany Med and Malta Med move to dismiss on the ground that the Amended Complaint fails to state a claim for relief. (Dkt. No. 66-1, at 20–21).

#### 1. Individual Defendants

"The purpose of EMTALA is to prevent 'patient dumping, the practice of refusing to provide emergency medical treatment to patients unable to pay, or transferring them before emergency conditions [are] stabilized.' " *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 792 (2d Cir. 1999) (quoting *Power v. Arlington Hosp. Ass'n*, 42 F.3d 851, 856 (4th Cir. 1994)). EMTALA expressly allows a patient to bring a civil suit for damages for an EMTALA violation against a "participating hospital." 42 U.S.C. § 1395dd(d)(2)(A). Here, however, in addition to suing Albany Med and Malta Med, Plaintiff sues three of the individual Defendants: Kirker, West, and Calistri. (Dkt. No. 45, ¶ 269). Although the Second Circuit has not addressed the issue, the Fourth, Sixth, Eighth, Ninth, and Tenth Circuits have held that EMTALA does not allow a private right of action against individual physicians. *See Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 877 (4th Cir. 1992) ("Although the statute clearly allows a patient to bring a civil suit for damages for an EMTALA violation against a participating hospital, no section permits an individual to bring a similar action against a treating physician.") (internal citation omitted) (citing 42 U.S.C. § 1395dd(d)(2)(A)); *Moses v. Providence Hosp. & Med. Centers, Inc.*, 561 F.3d 573, 587 (6th Cir. 2009); *King v. Ahrens*, 16 F.3d 265, 271 (8th Cir. 1994); *Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1256 (9th Cir. 1995); *Delaney v. Cade*, 986 F.2d 387, 393–94 (10th Cir. 1993); *see also Gatewood v. Wash. Healthcare Corp.*, 933 F.2d 1037, 1040 n.1 (D.C. Cir. 1991) (dicta). District courts within the Circuit have held likewise. *See Fisher by Fisher v. New York Health & Hosps. Corp.*, 989 F. Supp. 444, 448 (E.D.N.Y. 1998) ("Congress obviously considered enforcement mechanisms against participating hospitals and physicians, and chose to provide a private right of action against only hospitals, while authorizing the Secretary of Health and Human Services to proceed administratively against both hospitals and physicians.") (internal citation omitted) (citing 42 U.S.C. §§ 1395dd(d)(1), (2)(A), (2)(B)); *Hylton v. New York Methodist Hosp.*, 708 F. Supp. 2d 248, 252 (E.D.N.Y. 2009) ("There is no dispute that EMTALA is inapplicable to individual physicians."). Kirker, West, and Calistri are healthcare providers and hospital administrators, not physicians, but this is a distinction without a difference as the only defendant EMTALA, by its terms, allows an individual to sue is a "participating hospital." 42 U.S.C. § 1395dd(d)(2)(A). Thus, the EMTALA claims against Kirker, West, and Calistri are dismissed.

#### 2. Hospital Defendants [15]

[15]   Malta Med argues that as it an emergent care center and does not provide inpatient care, it is not a hospital subject to EMTALA. (Dkt. No. 66-1, at 20–21). Whether Malta Med provides inpatient care concerns a factual matter outside the Amended Complaint. Therefore, the Court declines to consider this argument. Moreover, the Amended Complaint alleges that Plaintiff was, at some point, "inpatient at Malta Med," (Dkt. No. 45, at 76), a fact the Court must accept as true at this stage of the litigation.

**\*15** The Hospital Defendants seek dismissal of Plaintiff's EMTALA claim on the ground that Plaintiff "fails to allege facts sufficient to show she suffered from an emergency medical condition upon arriving at Malta Med." (Dkt. No. 66-1, at 20). EMTALA "imposes two relevant obligations on a hospital receiving an emergency patient": (1) the hospital "must provide for an

Case 1:26-cv-00228-MAD-CBF     Document 5     Filed 04/13/26     Page 41 of 65

Rule v. Braiman, Not Reported in Fed. Supp. (2024)
2024 WL 4042135

appropriate medical screening examination ... to determine whether or not an emergency medical condition ... exists" ("screening requirement"); and (2) if the hospital "determines that that an individual has an 'emergency medical condition,' it 'must provide ... for such further medical examination and such treatment as may be required to stabilize the medical condition,' " ("stabilization requirement"). *Perez v. Brookdale Univ. Hosp. & Med. Ctr.*, 981 F. Supp. 2d 175, 177 (E.D.N.Y. 2013) (quoting 42 U.S.C. §§ 1395dd(a)–(b)). In this case, Plaintiff alleges that the Defendant Hospitals failed to meet the stabilization requirement: they failed to stabilize her emergency medical condition prior to discharge, (Dkt. No. 45, ¶ 275 (alleging that Plaintiff was "escorted off hospital premises after an [emergency medical condition] was found to exist without first stabilizing the Plaintiff's condition or transferring the Plaintiff to another facility")). [16]

[16]     Plaintiff states she received a "full screening" at Malta Med. (*See* Dkt. No. 45, ¶ 280 ("Malta Med Emergent Care conducted a full screening on the plaintiff and noted a number of concerning symptoms that they deemed needed stabilization.")).

In order to state a claim under EMTALA, a plaintiff must allege that she "went to the emergency room of a participating hospital seeking treatment for a medical condition, and that the hospital ... discharged or transferred her before such [her emergency medical] condition had been stabilized." *Brenord v. Cath. Med. Ctr. of Brooklyn & Queens, Inc.*, 133 F. Supp. 2d 179, 185 (E.D.N.Y. 2001) (citing *Fisher*, 989 F. Supp. at 448). Here, the Defendant Hospitals argue that Plaintiff's EMTALA claim fails because she fails to allege facts sufficient to show she suffered from an emergency medical condition. The statute defines "emergency medical condition" as "a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in ... placing the health of the individual ... in serious jeopardy; serious impairment to bodily functions; or ... [s]erious dysfunction of any bodily organ or part." 42 U.S.C. § 1395dd(e)(1). The Hospital Defendants argue Plaintiff's allegations that she was "crying, sweating, and shaking with a heightened pulse and blood pressure" upon arrival are insufficient to allow a plausible inference "that her health was in serious jeopardy, that her body functions were seriously impaired, or that any bodily organ or part was seriously dysfunctional." (Dkt. No. 66-1, at 20). However, in support of her claim that she was experiencing an emergency medical condition, Plaintiff also alleges that she was experiencing "complications due to the untreated cluster headaches," including pain, that her "vitals," including her blood pressure and pulse "were dangerously out of range" and "abnormally high," and that her "documented cardiovascular conditions" "including POTS (post orthostatic tachycardia syndrome) and venous insufficiency" "were discussed and documented during her visit to Malta Med." (Dkt. No. 45, ¶¶ 73–74, 93, 279). These allegations are sufficient to allege an emergency medical condition at this stage of the proceedings. As the Hospital Defendants do not otherwise challenge the merits of Plaintiff's EMTALA claim, their motion to dismiss is denied.

Accordingly, Plaintiff's EMTALA claims against Kirker, West, and Calistri are dismissed and the Defendant Hospital's motion to dismiss Plaintiff's EMTALA claims are denied.

### I. Americans with Disabilities Act (Tenth Cause of Action)

Plaintiff alleges Dr. Braiman, Albany Med, and Glens Falls Hospital subjected her to disability discrimination in violation of Title II and Title III of the ADA. (Dkt. No. 45, ¶ 311). These Defendants move to dismiss Plaintiff's ADA claims. (Dkt. No. 66-1, at 17–18; Dkt. No. 68-4, at 24). Defendants argue that because Plaintiff, as a private individual, can only seek injunctive (as opposed to compensatory) relief under Title III of the ADA, [17] and fails to allege a "material risk of future harm," she lacks standing to pursue a claim of injunctive relief under the ADA. (Dkt. No. 66-1, at 17). Defendants further argue the Amended Complaint fails to allege disability discrimination. (Dkt. No. 66-1, at 17–18; Dkt. No. 68-4, at 24). Plaintiff opposes Defendants' motions. (Dkt. No. 75, at 14; Dkt. No. 76, at 12–14).

[17]     "Monetary relief, however, is not available to private individuals under Title III of the ADA." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004)

Case 1:26-cv-00228-MAD-CBF    Document 5    Filed 04/13/26    Page 42 of 65

Rule v. Braiman, Not Reported in Fed. Supp. (2024)
2024 WL 4042135

### 1. Standing

**\*16** "Article III, Section 2 of the Constitution limits the jurisdiction of the federal courts to the resolution of 'cases' and 'controversies.' To ensure that this bedrock case-or-controversy requirement is met, courts require that plaintiffs establish their standing as the proper parties to bring suit." *Sonterra Capital Master Fund Ltd. v. UBS AG*, 954 F.3d 529, 533-34 (2d Cir. 2020) (quoting *Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 92 (2d Cir. 2018)). To establish standing a plaintiff must demonstrate (1) an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," (2) "a causal connection between the injury and the conduct complaint of," and (3) redressability of the injury by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations omitted). Where "a case is at the pleading stage, the plaintiff must 'clearly ... allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). "For injunctive relief, a plaintiff has suffered an injury in fact if the plaintiff has alleged past injury under the ADA and it is reasonable to conclude that, in the future, the discriminatory treatment would continue and the plaintiff intended to return to the subject location." *Woods v. Centro of Oneida, Inc.*, 103 F.4th 933, 940 (2d Cir. 2024) (internal quotations and citation omitted).

Plaintiff appears to seek injunctive relief in the form of "[t]rain[ing] all Defendant's current and future employees and agents" regarding "discrimination law, both state and federal." [18] (Dkt. No. 45, at 103). Here, Plaintiff alleges that she believed she was subject to disability discrimination by Dr. Braiman in the neurology department of Glens Falls Hospital and that she "is afraid to go to any local hospital" and now "frequently travels out of state for medical care." (Dkt. No. 45, ¶¶ 325–326). Liberally construing these allegations, it is reasonable to infer that Plaintiff would continue to seek treatment outside the Glens Falls Hospital neurology department until its staff was properly trained and the alleged discriminatory practices were eradicated. *See Woods v. Centro of Oneida, Inc.*, 103 F.4th 933, 940 (2d Cir. 2024) (concluding the plaintiff established standing to seek injunctive relief against public bus service under Title II of the ADA, explaining "it is reasonable to infer that Woods will continue to be deterred as long as Centro's transit system remains inaccessible, his alleged injury is also sufficient with respect to his claims for injunctive relief."). Accordingly, Defendants' motion to dismiss for lack of standing is denied.

18    As the Court finds below, however, Plaintiff wholly fails to plausibly allege disability discrimination against any party.


### 2. Individual Defendant

Plaintiff asserts her ADA claims against Dr. Braiman and the Hospital Defendants. However, as there is no individual liability under the ADA, *see MacPherson v. Eversource Energy Serv. Corp.*, No. 19-cv-01569, 2019 WL 13125523, at \*3, 2019 U.S. Dist. LEXIS 241378 (D. Conn. Dec. 10, 2019) ("[M]any cases from this and other circuits have held that individuals cannot be held personally liable for damages under the ADA, regardless of which title of the ADA is at issue." (quoting *Murray v. Tanea*, 357 F. Supp. 3d 226, 230 (W.D.N.Y. 2019))), Plaintiff's ADA claims against Dr. Braiman are dismissed.


### 3. Hospital Defendants

The Hospital Defendants move to dismiss Plaintiff's ADA claims for failure to allege disability bias. (Dkt. No. 66-1, at 17–18). "[A] plaintiff pleads an actionable claim of discrimination in the medical treatment context under the ADA ... if she alleges that the defendants made treatment decisions based on factors that are 'unrelated to, and thus improper to consideration of' the inquiry in question." *McGugan v. Aldana-Bernier*, 752 F.3d 224, 234 (2d Cir. 2014) (quoting *United States v. Univ. Hosp.*, 729 F.2d 144, 156 (2d Cir. 1984)); *see also id.* at 231 ("[A] doctor who inflicts or withholds a type of medical treatment for reasons having no relevance to medical appropriateness—reasons dictated by bias rather than medical knowledge—is practicing the pejorative form of discrimination."). Although Plaintiff alleges disability due to Ehlers Danlos Syndrome and cluster headaches,

2024 WL 4042135

she does not allege Dr. Braiman or any other medical provider withheld medical treatment for reasons dictated by bias on the basis of disability. Plaintiff alleges that "Dr. Braiman reportedly refused to prescribe certain treatments based solely on concerns about potential pregnancy risks, despite the plaintiff's assurances that pregnancy was not a possibility." (Dkt. No. 76, at 13). However, pregnancy does not typically constitute a disability under the ADA. *Sam-Sekur v. Whitmore Grp., Ltd.*, No. 11-cv-4938, 2012 WL 2244325, at *7, 2012 U.S. Dist. LEXIS 83586 (E.D.N.Y. June 15, 2012) (citing *Leahy v. Gap, Inc.*, 07-cv-2008, 2008 WL 2946007, at *5, 2008 U.S. Dist. LEXIS 58812 (E.D.N.Y. July 29, 2008)). Thus, Plaintiff's disability claim fails. Accordingly, Defendants' motion to dismiss Plaintiff's claim under the ADA (Tenth Cause of Action) is granted.

### J. Negligence (Eleventh Cause of Action) and Malpractice (Thirteenth Cause of Action) [19]

[19]     As Plaintiff's theories of liability in her negligence and malpractice causes of action overlap, the Court considers them together.

**\*17**  Plaintiff sues all Defendants for negligence and advances several different theories. (Dkt. No. 45, ¶¶ 315–28, 340–53). Construing the Amended Complaint liberally, it appears Plaintiff brings: (1) medical malpractice claims against all Defendants, in connection with her September 14 and 21, 2022 medical treatment, (2) a claim that Kirker, West, and Calistri breached their duty of confidentiality, violated Plaintiff's privacy, and failed to protect Plaintiff's private health information, and (3) a claim that Kirker, West, and Calistri falsely accused her of "live streaming" leading to her removal from the emergency department. (Dkt. No. 45, ¶¶ 315–28, 340–53). Defendants move to dismiss Plaintiff's negligence claim. (Dkt. No. 63-5, at 34–42; Dkt. No. 66-1, at 23–29; Dkt. No. 68-4, at 25). Plaintiff opposes Defendants' motions. (Dkt. No. 74, at 17–25; Dkt. No. 75, at 14–15; Dkt. No. 76, at 16–23).

### 1. Medical Malpractice

Defendants argue that to the extent Plaintiff's negligence claims arises in the context of her medical care, such claims can only be asserted as medical malpractice claims. (Dkt. No. 63-5, at 34–35; Dkt. No. 68-4, at 25). "To show negligence under New York state law, a plaintiff must demonstrate '(1) the defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that duty; and (3) the plaintiff suffered damage as a proximate result.' " *Ferreira v. City of Binghamton*, 975 F.3d 255, 266 (2d Cir. 2020) (quoting *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006)). However, "[w]hen the duty arises from the physician-patient relationship or is substantially related to medical treatment, the breach gives rise to an action sounding in medical malpractice, not simple negligence." *La Russo v. St. George's Univ. Sch. of Med.*, 747 F.3d 90, 101 (2d Cir. 2014) (quoting *Stanley v. Lebetkin*, 123 A.D.2d 854, 854, 507 N.Y.S.2d 468 (N.Y. App. Div. 2d Dep't 1986)). A medical malpractice claim requires a showing of "(1) a deviation or departure from accepted practice, and (2) evidence that such departure was a proximate cause of injury or damage." *Schoolcraft v. City of N.Y.*, 103 F. Supp. 3d 465, 534 (S.D.N.Y. 2015) (citing *Stukas v. Streiter*, 83 A.D.3d 18, 23, 918 N.Y.S.2d 176 (N.Y. App. Div. 2d Dep't 2011)). Because both negligence and medical malpractice claims require proximate causation and "there is no prohibition against simultaneously pleading both an ordinary negligence cause of action and one sounding in medical malpractice," the Court need not determine whether the action sounds in medical malpractice at this time. *Jones v. Beth Israel Hosp.*, No. 17-cv-3445, 2018 WL 1779344, at *9, 2018 U.S. Dist. LEXIS 62228 (S.D.N.Y. Apr. 12, 2018) (collecting cases); *see Gilinsky v. Indelicato*, 894 F. Supp. 86, 94 n.5 (E.D.N.Y. 1995) (finding no need to determine at the summary judgment stage "whether [the] action [was] more appropriately considered a medical malpractice action, as opposed to an ordinary negligence claim").

As relevant here, Plaintiff alleges Dr. Braiman breached the standard of care by denying medical treatment on the basis of age and sex, failing to consider Plaintiff's "wish not to have children," deprioritizing Plaintiff's safety, failing to respect Plaintiff's choice not to have children, and encouraging Plaintiff not to get an abortion in the event of pregnancy. (Dkt. No. 45, ¶ 323).

Case 1:26-cv-00228-MAD-CBF   Document 5   Filed 04/13/26   Page 44 of 65

Rule v. Braiman, Not Reported in Fed. Supp. (2024)
2024 WL 4042135

### a. Dr. Braiman and Hospital Defendants

Dr. Braiman argues that because the duty at issue arose from the medical treatment provided at Plaintiff's September 14, 2022 appointment, "Plaintiff's allegations sound in medical malpractice and not negligence" and asserts that, in any event Plaintiff fails to allege facts showing that Dr. Braiman was negligent or "deviated from an accepted standard of care." (Dkt. No. 68-4, at 25–26). The Hospital Defendants also seek dismissal of any medical malpractice claim. (Dkt. No. 66-1, at 27). Plaintiff opposes dismissal. (Dkt. No. 75, at 14–15; Dkt. No. 76, at 16–22).

**\*18**  Plaintiff alleges that during her September 14, 2022, appointment with Dr. Braiman regarding treatment for cluster headaches, the only treatments Dr. Braiman was willing to prescribe were those that Plaintiff—as she told Dr. Braiman—"had already tried and failed," (Dkt. No. 45, ¶ 60), that Dr. Braiman "sent in an injectable medication (Aimovig) to the Plaintiff's pharmacy without her consent or discussing the risks and benefits of the medication," (*id.* ¶ 62), and which she therefore returned to the pharmacy, (*id.* ¶ 65), and that on September 21, 2022, "Plaintiff experienced complications due to the untreated cluster headaches," including "crying, sweating, shaking, and ... heightened blood pressure and pulse due to the pain," (*id.* ¶ 73–74). Viewing Plaintiff's pro se allegations liberally, the Court concludes that it is plausible to infer that Dr. Braiman's failure to prescribe appropriate medication for Plaintiff's cluster headaches, or obtain informed consent regarding Aimovig, proximately caused Plaintiff's injuries. *See*, *e.g.*, *Henderson v. Takemoto*, 202 N.Y.S.3d 817, 822 (N.Y. App. Div. 3d Dep't 2024) (denying summary judgment where the plaintiff adduced evidence showing that the "individual defendants all departed from the accepted standard of care by failing to prescribe vitamin C to plaintiff in a timely manner and that such was a proximate cause of her injuries"); *see also Muchler v. Penwarden*, 207 A.D.2d 977, 617 N.Y.S.2d 87, 87 (N.Y. App. Div. 4th Dep't 1994) ("The allegation that defendant failed to inform plaintiff of the risks associated with the use of the prescribed medications ... could support plaintiff's right to recover for medical malpractice based on a lack of informed consent."). The Hospital Defendants argue that Plaintiff fails to allege how they deviated from the standard of care, (Dkt. No. 66-1, at 26–27), but accepting as true Plaintiff's allegation that Dr. Braiman acknowledged that the medications would be "safe and effective" for her condition, (Dkt. No. 45, ¶ 58), but refused to prescribe them, their argument is without merit. Accordingly, their motion to dismiss Plaintiff's medical malpractice (negligence) claim is denied.

### b. Informed Consent

To the extent Plaintiff also alleges medical malpractice based on Dr. Braiman's alleged failure to obtain informed consent before prescribing Aimovig, Defendants argue they are entitled to dismissal because Plaintiff refused Dr. Braiman's prescribed treatment. (Dkt. No. 66-1, at 28). The Court agrees.

To establish a "medical malpractice cause of action premised on lack of informed consent," a plaintiff must show that "(1) the practitioner failed to disclose the risks, benefits and alternatives to the procedure or treatment that a reasonable practitioner would have disclosed[,] (2) a reasonable person in the plaintiff's position, fully informed, would have elected not to undergo the procedure or treatment," *I.M. v. United States*, 362 F. Supp. 3d 161, 203 (S.D.N.Y. 2019) (quoting *Orphan v. Pilnik*, 15 N.Y.3d 907, 908, 914 N.Y.S.2d 729, 940 N.E.2d 555 (N.Y. 2010)), and "(3) that the lack of informed consent is a proximate cause of the injury," *Walker v. Saint Vincent Cath. Med. Centers*, 114 A.D.3d 669, 670, 979 N.Y.S.2d 697 (N.Y. App. Div. 2d Dep't 2014); *see also* N.Y. Pub. Health Law §§ 2805–d(1), (3). Here, Plaintiff expressly alleges that she returned the Aimovig and there are no allegations that she used the "injectable medication" or that she was injured in any way. (Dkt. No. 45, ¶¶ 62–65). Accordingly, any "informed consent" claim is dismissed.

### c. Kirker, West, Calistri, and Hospital Defendants

Case 1:26-cv-00228-MAD-CBF    Document 5    Filed 04/13/26    Page 45 of 65

Rule v. Braiman, Not Reported in Fed. Supp. (2024)
2024 WL 4042135

Plaintiff alleges that Kirker, West, Calistri, and the Hospital Defendants breached the duty of care by making false allegations against her and denying care and treatment in the emergency department at a point when she was "in urgent need." (Dkt. No. 45, ¶¶ 324–25). As the Amended Complaint is devoid of allegations that Kirker or West provided medical care to Plaintiff, any negligence claim based on medical malpractice is dismissed. *See Herman v. Kveton-Cattani*, 123 A.D.3d 1093, 1095, 999 N.Y.S.2d 528 (N.Y. App. Div. 2d Dep't 2014) (dismissing medical malpractice claim where the "plaintiff's factual allegations failed to state that [the defendant] herself actually rendered or attempted to render any medical care or treatment to the plaintiff"). However, construed liberally, Plaintiff's claim that Calistri discontinued the medication she previously ordered for Plaintiff, without stabilizing Plaintiff's headache pain or elevated blood pressure and pulse, are sufficient, at this stage, to state a claim of medical malpractice. Accordingly, Plaintiff's medical and professional malpractice claims against Kirker and West are dismissed, Defendants' motions to dismiss Plaintiff's medical malpractice claims are otherwise denied.

### 2. Private and Confidential Information

Plaintiff's negligence claim against Kirker and West is premised on their allegedly improper accessing of her confidential information and assertion of a false claim against her leading to her removal from the emergency department: "Donna Kirker and Lisa West had no right to access the plaintiff's private health information and used such protected information to create false allegations against the plaintiff to get her thrown out of an emergency room mid treatment." (Dkt. No. 45, ¶ 326). The Court analyzes this claim *infra* section IV.M.

### K. Negligence Per Se (Twelfth Cause of Action)

**\*19** Defendants move to dismiss Plaintiff's negligence per se claim. Under New York law, "[a] duty of care established by statute implicates the rule of negligence per se." *Rand v. Travelers Indem. Co.*, 637 F. Supp. 3d 55, 71 (S.D.N.Y. 2022) "Under the rule of negligence per se, if a statute is designed to protect a class of persons, in which the plaintiff is included, from the type of harm which in fact occurred as a result of its violation, the issues of the defendant's duty of care to the plaintiff and the defendant's breach of that duty are conclusively established upon proof that the statute was violated." *Id.* (quoting *German by German v. Fed. Home Loan Mortg. Corp.*, 896 F. Supp. 1385, 1396 (S.D.N.Y. 1995)). Plaintiff responds that Defendants' violation of HIPAA, EMTALA, federal criminal statutes, and "a number of state/common laws" give rise to negligence per se. (Dkt. No. 74, at 26). However, as discussed, HIPAA and the federal criminal statutes cited in the Amended Complaint do not provide a private right of action and EMTALA does not provide a right of action against Plaintiff's individual medical providers. *See Cohen v. Ne. Radiology, P.C.*, No. 20-cv-1202, 2021 WL 293123, at \*7, 2021 U.S. Dist. LEXIS 16497 (S.D.N.Y. Jan. 28, 2021) ("Indeed, that neither statutory scheme creates a private right of action weighs heavily against implying a private right of action necessary to sustain a negligence per se claim based upon either HIPAA or the FTC Act."). Accordingly, Plaintiff's negligence per se claims against Dr. Braiman, Kirker, West, and Calistri are dismissed.

The Hospital Defendants argue that Plaintiff's negligence per se claim must be dismissed because Plaintiff "has not set forth a cause of action against any Defendant for violation of any statute." (Dkt. No. 66-1, at 28). However, the Court has denied the Hospital Defendants' motion to dismiss the EMTALA claim, thus their argument is without merit. Although the Hospital Defendants recite the above-referenced legal standard, and further argue that Plaintiff has "failed to articulate how she is among the class of people for whose benefit any of the statutes mentioned has been enacted, or how a violation of any named statutes would constitute negligence per se," Defendants have not provided any factual or legal analysis.

Accordingly, Dr. Braiman, Kirker, West, and Calistri's motion to dismiss Plaintiff's negligence per se claim is granted, and the Hospital Defendants' motion to dismiss Plaintiff's negligence per se claim is denied.

### L. Intentional Infliction of Emotional Distress (Fourteenth Cause of Action)

Plaintiff's intentional infliction of emotional distress ("IIED") claim against Defendants is based on her allegations that: (1) Dr. Braiman's refusal to prescribe safe and effective treatment for her cluster headaches, leaving her "unable to find relief

Rule v. Braiman, Not Reported in Fed. Supp. (2024)

2024 WL 4042135

from the disabling pain," and (2) Kirker, West, and Calistri's false allegations of live streaming, threats of "security and legal action," and removal of Plaintiff "from emergency services while her condition was unstable and she was in immense pain," and "harass[ment] ... via social media," caused severe emotional distress. (Dkt. No. 45, ¶¶ 354–70). Defendants move to dismiss Plaintiff's IIED claim on the grounds that it is barred by the one-year statute of limitations and that the Amended Complaint fails to allege facts showing extreme and outrageous conduct, (Dkt. No. 63-5, at 45–48; Dkt. No. 66-1, at 30–31; Dkt. No. 68-4, at 28–29).

A claim of intentional infliction of emotional distress under New York law is subject to a one-year statute of limitations. *Verschleiser v. Frydman*, No. 22-cv-7909, 2023 WL 5835031, at *10, 2023 U.S. Dist. LEXIS 158963 (S.D.N.Y. Sept. 7, 2023) (citing *Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 836 N.Y.S.2d 509, 868 N.E.2d 189, 197 (N.Y. 2007)). Plaintiff filed this action on September 29, 2023. (Dkt. No. 1). Thus, insofar as Plaintiff's IIED claim is based on her September 14, 2022 appointment with Dr. Braiman, or his September 22, 2022 Aimovig prescription, it appears to be barred by the one-year statute of limitations. Plaintiff asserts that she was "informed by Meaghan Ginsberg at the NYS Department of Health and Human Services Office of Civil Rights that the statute of limitations for claims against the defendant begin one year AFTER the complaint is made to the appropriate state and federal entities at the time the investigation is closed or concluded, or after 180 days, whichever comes first." (Dkt. No. 75, at 17). This appears to be a reference to the statute of limitations applicable to discrimination claims subject to administration exhaustion. However, the Second Circuit has expressly held that, "as a matter of federal law[,] filing an EEOC charge does not toll the time for filing state tort claims, including those that arise out of the same nucleus of facts alleged in the charge of discrimination filed with the EEOC." *Castagna v. Luceno*, 744 F.3d 254, 258 (2d Cir. 2014). Thus, because Plaintiff filed this action on September 29, 2023, more than one year later, to the extent Plaintiff's IIED claim is based on Dr. Braiman's alleged conduct, it is time-barred. Likewise, to the extent Plaintiff's IIED claim stems from the events arising during her visit to the Malta Med emergency department on September 21, 2022, it is time-barred. However, Plaintiff additionally alleges that Calistri contacted Plaintiff's boyfriend on Facebook on September 30 and October 1, 2022, and disclosed private health information. As this alleged conduct occurred less than one-year before the September 29, 2023 action was filed, to the extent Plaintiff's IIED claim is based on this conduct, it would not be time-barred.

**\*20** In New York, "a claim for intentional infliction of emotional distress requires a showing of (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999). "New York sets a high threshold for conduct that is 'extreme and outrageous' enough to constitute intentional infliction of emotional distress." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996). "Whether the alleged conduct is sufficiently outrageous to satisfy [this element] is a matter of law for a court to decide." *Baez v. JetBlue Airways*, 745 F. Supp. 2d 214, 223 (E.D.N.Y. 2010).

Plaintiff alleges that Calistri sent Facebook messages to Plaintiff's boyfriend on September 30, 2022 and October 1, 2022, disclosing private medical information about Plaintiff. (Dkt. No. 45, ¶¶ 96–97). Even assuming this claim is not duplicative of the breach of confidentiality claim discussed below, *see Fischer v. Maloney*, 43 N.Y.2d 553, 402 N.Y.S.2d 991, 373 N.E.2d 1215 (N.Y. 1978) (stating IIED claims may be dismissed where they "falls well within the ambit of traditional tort liability" and are in fact duplicates of other claims put forward); *see also Franco v. Diaz*, 51 F. Supp. 3d 235, 243–44 (E.D.N.Y. 2014) ("Because precisely the same conduct and the same injury fall within the ambit of defendants' proposed defamation counterclaim, their IIED counterclaim in the Amended Answer must be dismissed as duplicative."), the Court concludes that two messages sent privately to one individual fail to allow a plausible inference of extreme and outrageous conduct. *See Stuto*, 164 F.3d at 827 (explaining that conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society"); *see also Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 530 (S.D.N.Y. 2013) (The " 'rigor of the outrageousness standard [for intentional infliction of emotional distress] is well-established,' " and the threshold is "exceedingly difficult to meet." (quoting *Mesa v. City of N.Y.*, No. 09-cv-10464, 2013 WL 31002, at *28, 2013 U.S. Dist. LEXIS 1097 (S.D.N.Y. Jan. 3, 2013))). Accordingly, Defendants' motions to dismiss Plaintiff's IIED claim are granted.

### M. Invasion of Privacy/Breach of Confidentiality (Fifteenth Cause of Action)

Plaintiff sues Kirker, West, Calistri, and the Hospital Defendants for invasion of privacy. Specifically, Plaintiff claims Kirker and West engaged in "intrusion upon seclusion" by accessing her private health information and that Calistri invaded her privacy by posting Plaintiff's private information on social media. (Dkt. No. 45, ¶¶ 377–78). Plaintiff also asserts her invasion of privacy claim against the Hospital Defendants. (*Id.* ¶ 378). Defendants move to dismiss Plaintiff's invasion of privacy claim.

As New York has "no common law right of privacy," Plaintiff's "intrusion upon seclusion" claim is dismissed. *See Hamlett v. Santander Consumer USA Inc.*, 931 F. Supp. 2d 451, 457 (E.D.N.Y. 2013) ("New York has consistently refused to recognize a common law right of privacy, and hence there is no cause of action of intrusion upon seclusion under New York law."). In New York, "the right to privacy is governed exclusively by sections 50 and 51 of the Civil Rights Law." *Howell v. New York Post Co.*, 81 N.Y.2d 115, 123, 596 N.Y.S.2d 350, 612 N.E.2d 699 (N.Y. 1993). "Section 50 prohibits the use of a living person's name, portrait or picture for 'advertising' or 'trade' purposes without prior written consent."[20] *Id.* No such allegations are present in this case.

[20]     "Section 50 provides criminal penalties and section 51 a private right of action for damages and injunctive relief." *Howell*, 81 N.Y.2d at 123, 596 N.Y.S.2d 350, 612 N.E.2d 699 (citing N.Y. Civ. Rights Law §§ 50–51).

**\*21** However, construing Plaintiff's allegations liberally to raise the strongest claims they suggest, it appears Plaintiff is attempting to assert that Kirker, West, Calistri, and the Hospital Defendants violated the physician-patient privilege, codified under New York law by section 4504 of the New York Civil Practice Law and Rules. Section 4505(a) provides: "Unless the patient waives the privilege, a person authorized to practice medicine ... shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity." N.Y. C.P.L.R. § 4504(a). The Court of Appeals of New York has explained that:

> The privilege applies not only to information orally communicated by the patient, but also to information ascertained by observing the patient's appearance and symptoms, unless those factual observations would be obvious to lay observers. Generally, the privilege covers all information relating to the nature of the treatment rendered and the diagnosis made. Although not covered by the statute, information obtained in a professional capacity but not necessary to enable the physician to fulfill his or her medical role is a protected confidence, the disclosure of which constitutes professional misconduct in the absence of patient consent or legal authorization.

*Chanko v. Am. Broad. Cos. Inc.*, 27 N.Y.3d 46, 53, 49 N.E.3d 1171 (N.Y. 2016) (internal citations and quotation marks omitted). To allege "breach of physician-patient confidentiality," a plaintiff must allege:

> (1) the existence of a physician-patient relationship; (2) the physician's acquisition of information relating to the patient's treatment or diagnosis; (3) the disclosure of such confidential information to a person not connected with the patient's medical treatment, in a manner that allows the patient to be identified; (4) lack of consent for that disclosure; and (5) damages.

*Chanko*, 27 N.Y.3d at 53–54, 49 N.E.3d 1171.

Plaintiff alleges that Kirker, the "Chief Nursing Officer of Glens Falls Hospital," called West, the "Administrative Director of Emergency Services" and also the "Chief Nursing Officer" of Saratoga Hospital, to say that Plaintiff "was live streaming," and

Rule v. Braiman, Not Reported in Fed. Supp. (2024)

2024 WL 4042135

that West relayed this information to an administrator at Malta Med, who relayed it to a "Charge Nurse" at Malta Med. (*Id.* ¶¶ 5–6, 83). The recording Plaintiff submitted as an exhibit to the Amended Complaint suggests that Kirker, West, or employees at Malta Med used a "tracker" to find Plaintiff and her room number and then disclosed that information, which ultimately reached Calistri and Plaintiff. (Dkt. No. 45, ¶ 85; *id.* at 144 (Exh. V)). Kirker seeks dismissal on the ground that she "acted within the bounds of patient privacy regulations" because neither Plaintiff's "live streaming" nor Plaintiff's room number at Malta Med constituted "private health information" and her alleged "disclosure" of this information to West at Saratoga Hospital was "from one covered entity to another" and made pursuant to the "operations exception." (Dkt. No. 66-1, at 25 & n.6 (asserting that "when a hospital administrator receives a report about an issue with someone who is possibly a patient in the hospital, the operations exception allows the administrator to look up where that person is to address the problem." (citing 45 C.F.R. § 164.506(c)))). West seeks dismissal on the ground that she conveyed the information at issue "to the people personally connected to the plaintiff's diagnosis and treatment" at Malta Med. (Dkt. No. 63-5, at 39). 45 C.F.R. § 164.506 governs "uses and disclosures" of "protected health care information" "to carry out treatment, payment or health care operations." While § 164.506(c) details four instances in which a "covered entity" may "disclose protected health information," no party has briefed the definition of these terms, or the applicability of any of these provisions here. The Court therefore declines to dismiss Plaintiff's breach of confidentiality claim at this juncture. Further, although West asserts she only disclosed Plaintiff's information to the people personally connected to the Plaintiff's treatment at Malta Med, the allegations before the Court do not indicate who West spoke with at Malta Med. (Dkt. No. 45, at 115) (patient record with notation by "Smith, Erin, RN" that "Lisa West called in regards to a patient live streaming in our facility gave the patients name and room number. Writer was informed that Lisa got a call from Glens Falls."). Accordingly, absent further briefing, the Court declines to dismiss on these grounds.

**\*22** Plaintiff alleges that Calistri's September 30 and October 1, 2022 Facebook messages to Plaintiff's boyfriend regarding Plaintiff's September 21, 2022 visit to the emergency department violated physician-patient confidentiality. Calistri only challenges the third and fourth elements—whether Plaintiff has alleged the disclosure of confidential information and whether Plaintiff adequately alleges the lack of consent for that disclosure. Specifically, Calistri argues that the information at issue was contained in a "private FB message" to Plaintiff's boyfriend, she did not discuss Plaintiff's "health information such as her diagnosis or the specific care she received," and, in any event, that there was "nothing in either of these messages which defendant Calistri sent privately to" Plaintiff's boyfriend "that plaintiff had not previously disclosed in a" September 23, 2022 TikTok post. (Dkt. No. 63-5, at 40). In the messages at issue, Calistri referred to "Tara" and "your girlfriend," thus disclosing Plaintiff's identity and status as a patient to Plaintiff's boyfriend. (Dkt. No. 45, at 120). Further, Calistri allegedly disclosed to Plaintiff's boyfriend that Plaintiff received "care in Glens Falls," that Calistri was Plaintiff's "nurse practitioner," that she "did everything [she] knew to help [Plaintiff] feel better," and that Plaintiff "was taken care of and got everything she requested and needed while under my care on September 21st." (*Id.* at 120–21, 596 N.Y.S.2d 350, 612 N.E.2d 699). While these statements may be viewed as non-specific, construed liberally, they refer to Plaintiff's treatment by Calistri on September 21, 2022, and thus allow a plausible inference that Calistri disclosed information regarding Plaintiff's treatment to Plaintiff's boyfriend, "a person not connected with [Plaintiff's] medical treatment." Although Calistri argues that Plaintiff herself previously disclosed the same information publicly on social media, the facts (and scope) of the alleged prior disclosure are outside the Amended Complaint. Thus, Calistri's waiver argument is unavailing at this stage of the litigation. [21] The Court observes, however, that voluntary disclosure may, in some instances, constitute waiver. *See*, *e.g.*, *Liverano v. Devinsky*, 278 A.D.2d 386, 387, 717 N.Y.S.2d 629 (N.Y. App. Div. 2d Dep't 2000) (concluding that "the physician-patient privilege was waived when [the patient] voluntarily disclosed the nature and extent of his glaucoma to members of the media, which resulted in the subsequent publication of his condition").

21     Calistri has attached a "Sep 23" screenshot of a social media post by Plaintiff. (Dkt. No. 63-4). However, this document contains material outside the Amended Complaint and the Court declines to consider it. To the extent Calistri points to Plaintiff's boyfriend's Google review, there are no allegations that Plaintiff herself wrote or authorized that review.

Accordingly, Defendants' motion to dismiss Plaintiff's breach of confidentiality claim is denied.

### N. Harassment (Sixteenth Cause of Action)

2024 WL 4042135

Kirker, West, Calistri, Albany Med, Malta Med, and Saratoga Hospital move to dismiss Plaintiff's harassment claim on the ground that New York does not recognize a common law harassment claim. (Dkt. No. 63-5, at 60 (citing *Hartman v. 536/540 E. 5th St. Equities*, 19 A.D.3d 240, 797 N.Y.S.2d 73 (N.Y. App. Div. 1st Dep't 2005)) Dkt. No. 63-5, at 50; Dkt. No. 66-1, at 29). Plaintiff opposes dismissal. (Dkt. No. 74, at 31–32; Dkt. No. 76, at 24). "New York does not recognize a common-law cause of action alleging harassment[.]" *Nolan v. Cnty. of Erie*, No. 19-cv-01245, 2020 WL 1969329, at *9, 2020 U.S. Dist. LEXIS 72729 (W.D.N.Y. Apr. 24, 2020) (quoting *Mago, LLC v. Singh*, 47 A.D.3d 772, 773, 851 N.Y.S.2d 593 (N.Y. App. Div. 2d Dep't 2008)). Accordingly, Defendants' motions to dismiss Plaintiff's harassment claim is granted.

### O. Negligent Infliction of Emotional Distress (Seventeenth Cause of Action)

Plaintiff's negligent infliction of emotional distress claim against Defendants is premised on: (1) Dr. Braiman's allegedly discriminatory conduct during the September 14, 2022 appointment and alleged failure to provide adequate treatment and obtain informed consent for the Aimovig prescription; and (2) Kirker, West, and Calistri's allegedly false accusations of "live streaming," discharge of Plaintiff from the emergency department based on false information, and provision of false and forged documents to Plaintiff's insurance company. (Dkt. No. 45, ¶¶ 391–97). Defendants move to dismiss on the grounds that Plaintiff fails to allege sufficient facts to show a direct duty or to "satisfy the necessary damages elements" of a negligent infliction of emotional distress claim. (Dkt. No. 63-2, at 51; Dkt. No. 66-1, at 25–26; Dkt. No. 68-4, at 29–30). Plaintiff opposes Defendants' motions. (Dkt. No. 74, at 32–33; Dkt. No. 75, at 18–20; Dkt. No. 76, at 16–23).

"To plead a negligent infliction of emotional distress claim under New York law, a plaintiff must allege (1) a breach of a duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021).

A plaintiff may establish a claim for negligent infliction of emotional distress under "(1) the bystander theory," which is inapplicable here as it typically involves witnessing harm to a close family member, "or (2) the direct duty theory," which allows a plaintiff to recover for emotional injury caused by a defendant's breach of a duty which "unreasonably endangered" the plaintiff's physical safety. *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000). Under both theories, the duty owed "must be specific to the plaintiff, and not some amorphous, free-floating duty to society." *Truman v. Brown*, 434 F. Supp. 3d 100, 123 (S.D.N.Y. 2020) (quoting *Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996)). As stated, "[b]oth theories require 'physical injury or the threat of danger, either to the plaintiff ... or to a close family member.' " *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 298 (S.D.N.Y. 2015) (quoting *Vaughn v. Am. Multi Cinema, Inc.*, No. 09-cv-8911, 2010 WL 3835191, at *5, 2010 U.S. Dist. LEXIS 96609 (S.D.N.Y. Sept. 13, 2010)); *see also Tigano v. United States*, 527 F. Supp. 3d 232, 249 (E.D.N.Y. 2021)

**\*23** The "guarantee of genuineness" element "requires a specific, recognized type of negligence that obviously has the propensity to cause extreme emotional distress such as the mishandling of a corpse or the transmission of false information that a parent or child had died." *Selvam v. United States*, 570 F. Supp. 3d 29, 50 (E.D.N.Y. 2021) (quotation marks omitted) (quoting *J.H. v. Bratton*, 248 F. Supp. 3d 401, 416 (E.D.N.Y. 2017)), *aff'd*, No. 21-2513-cv, 2022 WL 6589550, 2022 U.S. App. LEXIS 28208 (2d Cir. Oct. 11, 2022). "Alternatively, the breach 'must have at least endangered the plaintiff's physical safety or caused the plaintiff to fear for his or her own safety.' " *Selvam*, 570 F. Supp. 3d at 50 (quotation marks omitted) (quoting *Bratton*, 248 F. Supp. 3d at 416). "[B]y mandating some guarantee of the genuineness of the emotional injury, the Court of Appeals has recognized a standard that is effective to filter out petty and trivial complaints and to ensure that the alleged emotional distress is real." *Taggart v. Costabile*, 131 A.D.3d 243, 253 (App. Div. 2d Dep't 2015).

To the extent Plaintiff's claim is based on Dr. Braiman's alleged failure to treat her cluster headaches, and Calistri's allegedly premature discharge of her from the emergency department, they are duplicative of her medical malpractice claims. *Virgil v. Darlak*, No. 10-cv-6479, 2013 WL 4015368, at *10, 2013 U.S. Dist. LEXIS 110411 (W.D.N.Y. Aug. 6, 2013) (dismissing the plaintiff's negligent infliction of emotional distress claim as duplicative of his medical malpractice claim, explaining that "[a] claim for negligent infliction of emotional distress cannot be asserted if it is 'essentially duplicative of tort or contract causes

Case 1:26-cv-00228-MAD-CBF Document 5 Filed 04/13/26 Page 50 of 65

Rule v. Braiman, Not Reported in Fed. Supp. (2024)
2024 WL 4042135

of action.' "). Further, none of Plaintiff's remaining allegations against Dr. Braiman, including his discriminatory treatment and prescription of Aimovig, which she returned, allow a plausible inference that Dr. Braiman engaged in conduct that endangered Plaintiff's physical safety or caused Plaintiff to fear for her physical safety. Nor is it plausible to infer that Kirker, West, and Calistri's allegedly false accusations of "live streaming," the presence of "armed security" outside Plaintiff's hospital room, or Calistri's alleged provision of false and forged documents to Plaintiff's insurance company endangered Plaintiff's physical safety or caused her to fear for her physical safety. (Dkt. No. 45, ¶¶ 391–97). *See Hecht v. Kaplan*, 221 A.D.2d 100, 105, 645 N.Y.S.2d 51 (App. Div. 2d Dep't 1996) ("Since the plaintiff ... is seeking to recover solely for emotional harm, unaccompanied by any form of physical trauma, and has not alleged any physical harm, there is no cause of action to recover damages for the negligent infliction of emotional distress."). Thus, Plaintiff fails to state a negligent infliction of emotional distress claim against Defendants.

Accordingly, Defendants' motion to dismiss Plaintiff's claim of negligent infliction of emotional distress is granted.

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motions to dismiss (Dkt. Nos. 63, 66, 68) are **GRANTED in part** and **DENIED in part** as follows: [22]

- Plaintiff's Affordable Care Act Claim (First Cause of Action), against the individual Defendants and to the extent it seeks emotional and punitive damages is **DISMISSED with prejudice**. Plaintiff's Affordable Care Act Claim against the Hospital Defendants may otherwise proceed.

- Plaintiff's Title II and Title IX claims (Second Cause of Action) **is DISMISSED without prejudice** as to all Defendants.

- Plaintiff's Age Discrimination Act claim (Third Cause of Action) is **DISMISSED without prejudice** as to all Defendants.

- Plaintiff's Patient Self-Determination Act claim (Fourth Cause of Action) is **DISMISSED with prejudice** as to all Defendants.

**\*24** • Plaintiff's claims under the Federal Criminal Statutes (Fifth, Seventh, and Ninth Causes of Action) are **DISMISSED with prejudice** as to all Defendants.

- Plaintiff's HIPAA (Sixth Cause of Action) is **DISMISSED with prejudice** as to all Defendants.

- Plaintiff's claim under 42 U.S.C. § 1983 (Seventh Cause of Action) is **DISMISSED without prejudice** as to all Defendants.

- Plaintiff's EMTALA claim (Eighth Cause of Action) **is DISMISSED with prejudice** as to the individual Defendants but may proceed as to the Hospital Defendants.

- Plaintiff's Americans with Disabilities Act claim (Tenth Cause of Action) against Dr. Braiman is **DISMISSED with prejudice** and is **DISMISSED without prejudice** as to the Hospital Defendants.

- Plaintiff's Medical Malpractice claims (as alleged in her Eleventh and Thirteenth Causes of Action) against Dr. Braiman, Calistri, and Hospital Defendants may proceed. Plaintiff's negligence claim is otherwise **DISMISSED without prejudice**.

- Plaintiff's Negligence per se claim (Twelfth Cause of Action) is **DISMISSED without prejudice** as to Dr. Braiman, Kirker, West, and Calistri.

- Plaintiff's Intentional Infliction of Emotional Distress claim (Fourteenth Cause of Action) is **DISMISSED without prejudice**.

Rule v. Braiman, Not Reported in Fed. Supp. (2024)

2024 WL 4042135

Case 1:26-cv-00228-MAD-CBF   Document 5   Filed 04/13/26   Page 51 of 65

- Plaintiff's Invasion of Privacy (Breach of Confidentiality) claim (Fifteenth Cause of Action) is **DISMISSED without prejudice** as to Plaintiff's claim of intrusion upon seclusion but her claims based on breach of confidentiality may proceed.

- Plaintiff's Harassment claim (Sixteenth Cause of Action) is **DISMISSED with prejudice**.

- Plaintiff's Negligent Infliction of Emotional Distress (Seventeenth Cause of Action) is **DISMISSED without prejudice**.

22   Should Plaintiff seek to pursue a claim that the Court has dismissed without prejudice she must seek leaved to file an amended complaint by filing a motion to amend the complaint in accordance with Federal Rule of Civil Procedure 15 and Local Rule 15.1.

Thus, as outlined above, the following claims proceed: Plaintiff's Affordable Care Act claim (First Cause of Action) against the Hospital Defendants, Plaintiff's EMTALA claim (Eighth Cause of Action) against the Hospital Defendants, Plaintiff's negligence (medical malpractice) claim (Eleventh and Thirteenth Causes of Action) against Dr. Braiman, Calistri, and the Hospital Defendants, Plaintiff's negligence per se claim (Twelfth Cause of Action) against the Hospital Defendants, and Plaintiff's breach of confidence claims (Fifteenth Cause of Action) against the Hospital Defendants, Calistri, West, and Kirker.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2024 WL 4042135

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 2324128
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Curtis Dijon FISHER, Plaintiff,

v.

GLENS FALLS HOSPITAL, Glens Falls Hospital CEO/President, and Glens Falls Police Department, Defendants.

1:25-CV-831 (AJB/DJS)
|
Signed July 15, 2025

**Attorneys and Law Firms**

CURTIS DIJON FISHER, Plaintiff, Pro Se, 21085, Warren County Correctional Facility, 1400 State Route 9, Lake George, New York 12845.

## REPORT-RECOMMENDATION and ORDER

DANIEL J. STEWART, United States Magistrate Judge

**\*1** The Clerk has forwarded for review what has been docketed as a civil complaint filed by Plaintiff. Dkt. No. 1, Compl. Plaintiff has not paid the filing fee, but has submitted an application to proceed *in forma pauperis* ("IFP"), Dkt. No. 2, which the Court has granted.

## I. FACTUAL ALLEGATIONS

The Complaint is brought pursuant to 42 U.S.C. § 1983, alleging violation of Plaintiff's constitutional rights. Compl. at p. 3. Specifically, Plaintiff alleges violation of his rights under the First, Fourth, Sixth, Eighth, Tenth, and Fourteenth Amendments. *Id.* at p. 6. He also appears to be asserting a state law claim for medical malpractice. *Id.* at p. 2.

Plaintiff alleges that in July 2023 he suffered gunshot wounds. *Id.* at p. 6. Instead of immediately providing medical care, the Complaint alleges that detectives with the Glens Falls Police Department improperly questioned him about the incident for hours. *Id.* Plaintiff claims that he suffered injury at Glens Falls Hospital when his wound was merely stitched without removing bullet fragments. *Id.* at pp. 1 & 6. He claims he had to seek relief at another hositpal at a later date for follow-up treatment. *Id.* at p. 6.

## II. SUFFICIENCY OF THE COMPLAINT

### A. Governing Legal Standard

28 U.S.C. § 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) ... the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [1] Thus, even if a plaintiff meets the financial criteria to commence an action *in forma pauperis*, it is the court's responsibility to

determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action *in forma pauperis. See id.*

1       To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin, 171* F.3d 115, 116 (2d Cir. 1999) (*per curiam*); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate *pro se* prisoner complaints).

In reviewing *a pro se* complaint, the court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (*per curiam*), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556).

**\*2** Although a court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

## B. Analysis of the Complaint

### 1. Section 1983

Upon review, all of Plaintiff's section 1983 claims should be dismissed.

First, claims against the Glens Falls Police Department should be dismissed. "A city police department is not an independent, suable entity separate from the municipality in which the police department is organized." *Krug v. Cty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008). As a result, claims against that entity must be dismissed.

Next, Section 1983 claims against Glens Falls Hospital and its President should be dismissed based on the lack of state action. "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks omitted). "A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to show state action." *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003). "State action requires both the exercise of some right or privilege created by the State

and the involvement of a person who may fairly be said to be a state actor." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (quoting *Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d at 186) (internal quotations and alterations omitted). Plaintiff has failed to make any allegations establishing that either of these Defendants are state actors.

"In general, a private hospital will not be considered a state actor." *Rule v. Braiman*, 2024 WL 4042135, at *13 (N.D.N.Y. Sept. 4, 2024) (internal quotation omitted). While private parties, such as the Hospital and its President generally are not state actors, their conduct can be attributed to the state for section 1983 purposes if "(1) the State compelled the conduct, (2) there is a sufficiently close nexus between the State and the private conduct, or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State." *Hogan v. A.O. Fox Mem'l Hosp.*, 346 F. App'x 627, 629 (2d Cir. 2009). The activities of private hospitals and their officers typically do not satisfy any of these tests. *Id.*; *Rule v. Braiman*, 2024 WL 4042135, at *13. "[P]laintiff's complaint contains no allegations that defendant Glens Falls Hospital is a state actor. Since it is the duty of the plaintiff to allege state action on the part of the defendant named in a complaint, a court may dismiss an action under 28 U.S.C. § 1915(e) where a plaintiff fails to plead such a nexus." *Denes v. Glens Falls Hosp.*, 2005 WL 2033489, at *2 (N.D.N.Y. Aug. 17, 2005).

Accordingly, the Court recommends that the section 1983 claims asserted here be dismissed.

### 2. State Law Claims

 **\*3** Liberally construed, the Complaint also asserts claims for medical malpractice. That claim should also be dismissed at this juncture based on a lack of subject matter jurisdiction.

"[A] medical malpractice claim is a state law claim that is neither created by federal law nor necessarily depends on the resolution of a substantial question of federal law." *Gilmore for Gilmore v. Rensselaer Cnty. Med. Exam'r*, 2022 WL 1985664, at *4 (N.D.N.Y. June 3, 2022), *report and recommendation adopted,* 2022 WL 2827514 (N.D.N.Y. July 20, 2022) (internal quotations omitted). Thus, this Court has jurisdiction only if there is diversity of citizenship.

"Diversity jurisdiction exists where the parties are citizens of different states and the amount in controversy exceeds $75,000." *Ceglia v. Zuckerberg*, 772 F. Supp. 2d 453, 455 (W.D.N.Y. 2011). "A case falls within the federal district court's original diversity jurisdiction only if diversity of citizenship among the parties is complete, *i.e.*, only if there is no plaintiff and no defendant who are citizens of the same State." *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998) (internal quotations omitted). Complete diversity is required – meaning if any Defendant is a resident of the same state as the Plaintiff, diversity jurisdiction does not exist. *Seemann v. Maxwell*, 178 F.R.D. 23, 24 (N.D.N.Y. 1998). The Complaint specifically alleges that both Plaintiff and Defendants are residents of New York. Compl. at pp. 4-5. As a result, there is also no diversity jurisdiction in this case and no independent jurisdictional basis for entertaining these claims.

A district court may decline to exercise supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Having recommended dismissal of the federal claims over which the Court has original jurisdiction, the Court also recommends that the District Court decline to exercise its supplemental jurisdiction over any state law claims Plaintiff may be asserting.

### 3. Leave to Amend

"[A] court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Bruce v. Tompkins Cty. Dep't of Soc. Servs. ex*

2025 WL 2324128

*rel. Kephart*, 2015 WL 151029, at \*4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991)). Accordingly, the Court recommends that the Complaint be dismissed, but that Plaintiff be afforded an opportunity to amend.

The Court advises Plaintiff that should he be permitted to amend his Complaint, any amended pleading he submits must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Any such amended complaint, **which shall supersede and replace in its entirety the previous Complaint filed by Plaintiff**, must contain **sequentially numbered paragraphs containing only one act of misconduct per paragraph**. Thus, if Plaintiff claims that his civil and/or constitutional rights were violated by more than one defendant, or on more than one occasion, he should include a corresponding number of paragraphs in his amended complaint for each such allegation, with each paragraph specifying (i) the alleged act of misconduct; (ii) the date, including the year, on which such misconduct occurred; (iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate, the location where the alleged misconduct occurred; and, (v) the nexus between such misconduct and Plaintiff's civil and/or constitutional rights.

**\*4** Plaintiff is further cautioned that no portion of his prior Complaint shall be incorporated into his amended complaint by reference. Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the defendants and must demonstrate that a case or controversy exists between the Plaintiff and the defendants which Plaintiff has a legal right to pursue and over which this Court has jurisdiction. If Plaintiff is alleging that the named defendant violated a law, he should specifically refer to such law.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Complaint be **DISMISSED with leave to amend**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) [2] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

[2] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

**All Citations**

Slip Copy, 2025 WL 2324128

---

2025 WL 2323523

2025 WL 2323523
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Curtis Dijon FISHER, Plaintiff,
v.
GLENS FALLS HOSPITAL et al., Defendants.

1:25-CV-831 (AJB/DJS)
|
Signed August 12, 2025

**Attorneys and Law Firms**

CURTIS DIJON FISHER, Plaintiff, Pro Se, 21085, Warren County Correctional Facility, 1400 State Route 9, Lake George, NY 12845.

## ORDER ON REPORT & RECOMMENDATION

Anthony Brindisi, United States District Judge:

 **\*1** On June 26, 2025, *pro se* plaintiff Curtis Dijon Fisher ("plaintiff"), who is currently being detained in the Warren County Correctional Facility, filed this 42 U.S.C. § 1983 action alleging that defendants violated his civil rights. Dkt. No. 1. Along with his complaint, plaintiff moved for leave to proceed *in forma pauperis* ("IFP Application"). Dkt. No. 2, 3.

On July 15, 2025, U.S. Magistrate Judge Daniel J. Stewart granted plaintiff's IFP Application, Dkt. No. 4, and conducted an initial review of plaintiff's pleading. Based on this initial review, Judge Stewart advised by Report & Recommendation ("R&R") that plaintiff's complaint be dismissed with leave to amend. Dkt. No. 5.

Plaintiff has not lodged objections to the R&R. The time period in which to do so has expired. However, plaintiff has submitted a First Amended Complaint in accordance with the R&R. Dkt. No. 6. Upon review for clear error, the R&R will be accepted and adopted, *see* FED. R. CIV. P. 72(b), and plaintiff's First Amended Complaint will be referred to Judge Stewart for further action as appropriate.

Therefore, it is

ORDERED that

1. The Report & Recommendation (Dkt. No. 5) is ACCEPTED; and

2. Plaintiff's complaint (Dkt. No. 1) is DISMISSED with leave to amend; and

3. Plaintiff's First Amended Complaint (Dkt. No. 6) is REFERRED to Judge Stewart.

The Clerk of the Court is directed to terminate the pending motion and refer the First Amended Complaint (Dkt. No. 6) to the assigned Magistrate Judge for further action.

**IT IS SO ORDERED.**

Case 1:26-cv-00228-MAD-CBF    Document 5    Filed 04/13/26    Page 57 of 65

2025 WL 2323523

**All Citations**

Slip Copy, 2025 WL 2323523

---

**End of Document**
© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:26-cv-00228-MAD-CBF    Document 5    Filed 04/13/26    Page 58 of 65

**Moran v. Deamelia, Not Reported in Fed. Supp. (2017)**

2017 WL 2805160

 KeyCite Overruling Risk

Overruling Risk   Zarda v. Altitude Express, Inc.,   2nd Cir.,   February 26, 2018

2017 WL 2805160
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Thomas J. MORAN, Plaintiff,

v.

Victor P. DEAMELIA, Amanda Colomb, Nicole Comstock, Defendants.

1:17-CV-422 (TJM/CFH)

|

Signed 04/20/2017

**Attorneys and Law Firms**

Thomas J. Moran, 600 16 $^{th}$ Street, Apt. 203, Watervliet, New York 12189, Plaintiff Pro se.

**REPORT-RECOMMENDATION AND ORDER**

Christian F. Hummel, U.S. Magistrate Judge

 **\*1**  Presently pending before the Court is plaintiff pro se Thomas J. Moran's application to proceed in forma pauperis ("IFP") and motion for appointment of counsel. Dkt. Nos. 2, 3.

**I. In Forma Pauperis Application**

After reviewing plaintiff's IFP Application, the Court finds that he may properly proceed with this matter in forma pauperis. [1] See Dkt. No. 2.

[1]     Despite his IFP status in this action, plaintiff may still be responsible for any costs he may incur, such as copying fees or witness fees.

**II. Initial Review** [2]

[2]     Any unpublished decisions cited within this Report-Recommendation and Order have been provided to plaintiff pro se.

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action. In reviewing a pro se complaint, the court must be mindful that the plaintiff's pleadings should be held to "less stringent standards than formal pleadings drafted by lawyers." Hughes v. Rowe, 449 U.S. 5, 9 (1980) (internal quotation marks omitted); Erickson v. Pardus, 551 U.S. 89, 94 (2007).

To state a claim on which relief can be granted, a complaint must contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Further,

> [d]etermining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief.

Id. at 679 (internal citation omitted); FED. R. CIV. P. 8(a)(2).

Here, plaintiff alleges[3] that defendants, employees with the New York State Division of Human Rights,[4] discriminated against him on the basis of his sexual orientation and disability. See generally Dkt. No. 1 ("Compl.").[5] Plaintiff alleges that defendants' discriminatory conduct violated the Americans with Disabilities Act ("ADA") and Title VII of the Civil Rights Act of 1964 ("Title VII"). Id. at 6. Plaintiff filed a complaint against his former employer, nonparty Jewish Board of Family and Children's Services, for discrimination on the basis of his race, sexual orientation, and disability with the New York State Division of Human Rights ("NYSDHR"). Id.; Dkt. No. 1-1 at 23-25. Plaintiff's claims in this complaint arise out of defendants' handling of plaintiff's employment discrimination complaint. Compl. at 6. Specifically, plaintiff contends that defendants discriminated against him on the basis of his disability and sexual orientation insofar as they (1) provided extensions of time and an adjournment to his former employer, but did not provide such extensions for plaintiff, and failed to explain why these extensions were awarded to his former employer; (2) were rude, dismissive, or otherwise refused to offer assistance or explain procedures; (3) refused to send plaintiff copies of the NYSDHR internal procedures; (4) permitted apparent non-attorneys to represent the former employer during the conference, and failed to include in conference notes the fact that "Mr. DeAmelia allowed two attorneys into this conference to practice law without law licenses"; and (5) produced a "fraudulent report" in the form of a "one-sided" "Determination and Order after Investigation" concluding that his former employer did not commit actionable discrimination. See Compl. at 6-13.

3    Plaintiff submits his complaint on a form for a civil rights complaint pursuant to 42 U.S.C. § 1983, but does not set forth any allegations of violations of his constitutional rights under color of state law pursuant to section 1983. See Compl. Instead, plaintiff attempts to set forth allegations pursuant to the Americans with Disabilities Act and Title VII. However, it appears plaintiff merely used this form out of convenience, and not in an attempt to set forth section 1983 claims.

4    The New York State Division of Human Rights was not named as a party to this action.

5    This Court's citation to the pages in the complaint are to the pagination generated by the Court's electronic filing system at the top of each page, rather than to the pagination of the original document.

**\*2** Plaintiff demands "ALL monies due" to him as he

alleges Mr. Victor De Amelia may have used or presently may be using Mr. Thomas J. Moran's name and identity which plaintiff alleges may have been taken by Mr. Victor P. DeAmelia presently and Plaintiff alleges may have been taken in the past without Mr. Thomas J. Moran's acknowledgment and/or consent.

Compl. at 13. Plaintiff further seeks monetary damages in the amount of $900 million from Mr. DeAmelia and $1 billion from the NYSDHR. Id. Plaintiff also seeks injunctive relief in the form of (1) "an investigation into all of Mr. Victor P. DeAmelia's dealings, job performance and relationship Defendant has now and had in the past as Regional Director of the New York State Division of Human Right using Mr. Thomas J. Moran's name and identity," (2) "[t]he resignation of Mr. Victor P. DeAmelia from the New York State Division of Human Rights," (3) the "bar[ring] of Mr. DeAmelia "from ever working again in the name of Human Rights or in a Human Resources capacity anywhere in the United States of America." Id. Plaintiff also demands costs. Id.

## A. ADA [6]

[6] Copies of any unpublished decisions cited within this Report-Recommendation and Order have been provided to plaintiff by the Court.

Plaintiff alleges that he is disabled due to major depressive disorder and attention deficit hyperactivity disorder. Compl. at 5. Plaintiff contends that defendants discriminated against him, as detailed above, because he is disabled. See generally id.

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A public entity includes "any department, agency ... or other instrumentality of a State or States or local government[.]" 42 U.S.C. § 12131(1)(B). A qualified individual with a disability is defined as

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

Id. § 12141(2). To demonstrate a prima facie case of discrimination on the basis of disability under Title II of the ADA, "a plaintiff must adequately allege that: (1) he is a 'qualified individual with a disability'; (2) he was excluded from participation in a public entity's services, programs, or activities; and (3) the exclusion was the result of his disability." Natarelli v. VESID Office, 420 Fed.Appx. 53 (2d Cir. 2011) (summary order) (citing Hargrave v. Vermont, 340 F.3d 27, 34-35 (2d Cir. 2003)).

The Court will assume, for purposes of this motion, that plaintiff is a qualified individual with a disability. 42 U.S.C. § 12141(2). Thus, the Court will assess whether plaintiff has demonstrated that he was "excluded from participation in a public entity's services, programs, or activities." Id. § 12132. First, it is clear that NYSDHR is a "public entity"; however, plaintiff has not named the NYSDHR has a defendant. See generally Compl. Instead, the named defendants are individual employees of the NYSDHR. Id. Second, it is well settled that discrimination claims under Title II of the ADA can be asserted only against public entities, not individual employees of public entities in either their individual or official capacities. See, e.g., Hallett v. New York

State Dep't of Corr. Services, 109 F. Supp. 2d 190, 199 (S.D.N.Y. 2000) (citing Cerrato v. Durham, 941 F. Supp. 388, 395 (2d Cir. 1996)); Bottge v. Suburban Propane, 77 F. Supp. 2d 310, 313 (N.D.N.Y. 1999). Thus, plaintiff has not met the requirements of the second prong of Title II insofar as he has named only individual defendants—against whom Title II of the ADA does not apply—and, thus, has not demonstrated discrimination by a public entity. [7]

[7]    Although plaintiff must meet all prongs in order to have demonstrated a prima facie claim under Title II, the undersigned will continue to assess whether plaintiff has met the third prong of Title II in order to assess whether plaintiff should be afforded an opportunity to amend.

 **\*3**  Further relating to the second prong of Title II, it is less than clear that plaintiff was denied the benefits of a public service or program or was discriminated by the employees of the NYSDHR. Read very liberally, plaintiff's complaint appears to suggest that, due to defendants' disability discrimination, he was denied the benefit of NYSDHR's employment discrimination complaint procedure because he was not given a fair and unbiased review of his complaint, was denied an explanation of the NYSDHR's process and procedures, and was denied adequate time in which to participate fully in the process. See generally Compl. Insofar as plaintiff's complaint suggests he was discriminated against because defendants denied him adequate time to file a response or gave him less time than his former employer, plaintiff has not even suggested that he timely requested an extension, provided good cause for the request, and that such request was denied. See generally Compl. Further, plaintiff has not alleged why the time extensions given to his former employer were invalid or done as a form of disability discrimination. Thus, the undersigned concludes that plaintiff's complaints that he was not given enough time to file a response or was unfairly given less time than his former employer does not, without more, demonstrate that he was denied participation in a public entity's service or program.

Even assuming plaintiff has demonstrated that he is a qualified individual with a disability, and demonstrated that he was denied participation in a public service or benefit by a public entity, even with a liberal reading of his complaint, plaintiff has not demonstrated that "defendants were motivated by irrational discriminatory animus or ill will based on his alleged ... disability." Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn, 280 F.3d 98, 113 (2d Cir. 2001); Frank v. Sachem Sch. Dist., 84 F. Supp. 3d 172, 186 (E.D.N.Y. 2015) ("To prove intentional discrimination under the ADA, a plaintiff must allege facts showing that a policymaker acted with ill will or personal animosity toward him because of his disability or that the policymaker acted with deliberate indifference to his rights under the ADA.") (internal citation and quotation marks omitted). Although defendants may have been aware of plaintiff's alleged disabilities because his underlying discrimination complaint against his former employer filed with the NYSDHR appears to have been based, in part, on his disabilities, he offers not even a scintilla of proof that the alleged misconduct was *"motivated" by* his major depressive disorder and ADHD. As plaintiff provides the Court with no factual support for this allegation, it is the undersigned's opinion that plaintiff has failed to demonstrate that defendants' conduct was motivated by "motivated by irrational discriminatory animus or ill will" due to his disability. Garcia, 280 F.3d at 113.

Finally, it is noted that plaintiff seeks monetary damages against defendant DeAmelia and the NYSDHR, which he has not named as a party and against which he has not asserted specific claims. See Compl. at 13. Plaintiff does not indicate what portion of the requested damages he intends to be compensatory and which are punitive. See id. Although compensatory damages are recoverable under the ADA, punitive damages are not. Barnes v. Gorman, 536 U.S. 181, 189-90 (2002). Thus, it is recommended that, insofar as plaintiff's complaint seeks punitive damages under the ADA, such demand be dismissed with prejudice. Insofar as plaintiff seeks compensatory damages, it is recommended that such claims be dismissed without prejudice.

Insofar as plaintiff seeks injunctive relief, it is noted that, to demonstrate that he has standing to seek injunctive relief, plaintiff must demonstrate that there is a "real or immediate threat that he will be wronged again" by defendants. Naiman v. New York Univ., No. 95 Civ. 6469 (LMM), 1997 WL 249970, at *4 (S.D.N.Y. May 13, 1997). This must be more than a hypothetical or possible likelihood. Id. Although plaintiff does not explain how there is a continued or immediate threat that he will continue to be harmed by defendants, giving plaintiff due solicitude, it is at least arguable, at this early stage, that plaintiff has demonstrated standing for injunctive relief as it is possible that plaintiff may seek to file future employment discrimination cases that would be handled by the NYSDHR. Thus, it is recommended that plaintiff's claims for injunctive relief under the ADA be dismissed without prejudice.

**\*4** In sum, for all of the reasons stated above, the undersigned recommends that (1) plaintiff's ADA claims against defendants DeAmelia, Colcomb, and Comstock be dismissed with prejudice, but without prejudice to plaintiff's ability to allege ADA claims against a proper defendant should he seek to allege such claims in the future and with proper support; (2) plaintiff's claims for compensatory and injunctive relief under the ADA be dismissed without prejudice; and (3) plaintiff's claim for punitive damages under the ADA be dismissed with prejudice.

### B. Title VII

Plaintiff argues that he was discriminated against by defendants, in violation of Title VII, on the basis of his sexual orientation. See generally Compl. Plaintiff does not distinguish between alleged acts taken based on disability discrimination versus sexual-orientation discrimination, instead making general suggestions that the alleged rude treatment, denial of extensions or inequitable grant of extensions to the former employer, and biased final determination occurred due to discrimination as to both factors. See id.

Title VII applies to employment discrimination, and, thus, is not applicable to plaintiff's claims. 42 U.S.C. § 2000e, et seq. Even assuming plaintiff could demonstrate that sexual orientation discrimination is covered by Title VII, [8] it is abundantly clear from the complaint that plaintiff will be unable to demonstrate that employees of the NYSDHR, or NYSDHR itself, committed employment discrimination against plaintiff. Based on the allegations set forth in the complaint, plaintiff was never employed by defendants or the NYSDHR, nor has he sought employment and been discriminated against on the basis his membership in a protected class. Although plaintiff reached out to defendants for assistance with employment-related discrimination, his claims against defendants in this action do not arise out of employment discrimination. His allegations that defendants, employees of a state agency, [9] discriminated against him relating to their handling of his employment discrimination case, therefore, plainly fall outside of the confines of Title VII. Accordingly, it is recommended that plaintiff's claims that defendants discriminated against him in violation of Title VII be dismissed with prejudice. [10]

[8]    The Second Circuit has declined to hold that Title VII's definition of prohibiting discrimination "because of ... sex" includes sexual orientation. Zarda v. Altitude Express, —— F.3d ——, 2017 WL 1378932, at \*2-3 (2d Cir. Apr. 18, 2017) (declining to overturn Simonton v. Runyon, 232 F.3d 33, 36 (2d Cir. 2000) to hold that Title VII sex discrimination includes prohibitions on sexual orientation discrimination); Anonymous v. Omnicom Group, Inc., —— F.3d ——, 2017 WL 1130183 (2d Cir. Mar. 27, 2017).

[9]    It is also noted that, even if Title VII applied, no private action may be brought against individuals in either their personal or official capacity under Title VII.

[10]    Plaintiff has not attempted to set forth any state-law sexual orientation discrimination claims. See, e.g., N.Y. Exec. Law § 296(1)(a). Although it is possible that plaintiff may be able to allege such claims, as plaintiff has set forth no viable sexual orientation discrimination claims, opportunity to amend to provide a chance to assert potential state law claims is not recommended.

### III. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that plaintiff's application for in forma pauperis status be **GRANTED**, and it is

**RECOMMENDED**, that plaintiff's Title VII claims be **DISMISSED with prejudice**; and it is

2017 WL 2805160

 **\*5  RECOMMENDED**, that plaintiff's ADA claims be **DISMISSED** against defendants Victor P. DeAmelia, Amanda Colomb, and Nicole Comstock, **with prejudice**; and it is

**RECOMMENDED**, that plaintiff's ADA claims otherwise be **DISMISSED without prejudice** insofar as plaintiff may potentially seek to bring such claims against a proper defendant in the future; and it is

**RECOMMENDED**, that insofar as plaintiff seeks punitive damages under the ADA, such claim be **DISMISSED with prejudice**; and it is

**RECOMMENDED**, that plaintiff's request for compensatory and injunctive relief under the ADA be **DISMISSED without prejudice**; and it is

**RECOMMENDED**, that the motion for appointment of counsel (Dkt. No. 3) be **DENIED without prejudice**, as the undersigned recommends dismissal of the complaint in its entirety; [11] and it is

[11]   The undersigned also observes that plaintiff failed to demonstrate the efforts he took to find an attorney on his own or attach correspondence supporting such attempts, despite signing his motion for appointment of counsel stating that he had completed such actions and declar[ing] under penalty of perjury that the foregoing is true and correct." Dkt. No. 3.

**ORDERED**, that the Clerk of the Court serve this Report-Recommendation and Order on the plaintiff in accordance with Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1), parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the ... recommendation." N.Y.N.D. L.R. 72.1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

**All Citations**

Not Reported in Fed. Supp., 2017 WL 2805160

---

**End of Document**                                        © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 2804941

2017 WL 2804941
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Thomas J. MORAN, Plaintiff,

v.

Victor P. DEAMELIA, Amanda Colomb, and Nicole Comstock, Defendants.

1:17-CV-422
|
Signed 06/28/2017

**Attorneys and Law Firms**

Thomas J. Moran, Watervliet, NY, pro se.

**DECISION & ORDER**

Thomas J. McAvoy, Senior U.S. District Judge

**\*1** This *pro se* civil action, brought pursuant to the Americans with Disabilities Act ("ADA") and Title VII of the Civil Rights Act of 1964 ("Title VII"), was referred to the Hon. Christian F. Hummel, United States Magistrate Judge, for a Report-Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

The Report-Recommendation, dated April 20, 2017, provided the Complaint–filed *in forma pauperis*–with a preliminary screening. After engaging in that screening, Magistrate Judge Hummel recommended that Plaintiff's complaint be dismissed in its entirety. The Magistrate Judge recommended that some claims be dismissed with prejudice and some without prejudice. He also recommended that Plaintiff's motion for appointment of counsel be denied without prejudice.

Plaintiff has filed objections to the Report-Recommendation. When objections to a magistrate judge's Report-Recommendation are lodged, the Court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." See 28 U.S.C. § 636(b)(1). After such a review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." Id.

Having reviewed the record *de novo* and having considered the issues raised in the Plaintiff's objections, the Court has determined to accept and adopt the recommendation of Magistrate Judge Hummel for the reasons stated in the Report-Recommendation.

Therefore, the Plaintiff's objections to the Report-Recommendation of Magistrate Judge Hummel, Dkt. # 6, are hereby **OVERRULED**. The Report-Recommendation, Dkt. # 5, is hereby **ADOPTED**; and:

1. Plaintiff's Title VII claims are hereby **DISMISSED** with prejudice;

2. Plaintiff's ADA claims are hereby **DISMISSED** against Defendants Victor P. DeAmelia, Amanda Colomb, and Nicole Comstock, with prejudice;

3. Plaintiff's ADA claims are hereby **DISMISSED** without prejudice to Plaintiff bringing ADA claims against a proper defendant in the future;

2017 WL 2804941

4. Plaintiff's demand for punitive damages under the ADA is hereby **DISMISSED** with prejudice;

5. Plaintiff's demand for compensatory and injunctive relief under the ADA is hereby **DISMISSED** without prejudice; and

6. Plaintiff's motion for appointment of counsel, dkt. # 3, is hereby **DENIED** without prejudice.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 2804941

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.